**Alexander GAUS, Jr., Plaintiff,**

v.

**COUNTY OF WELLS, INDIANA; Board of Commissioners of Wells County; Tom Frantz, Commissioner; John Studebaker, Commissioner; William Thomas, Commissioner, Defendants.**

**Alexander GAUS, Jr., Plaintiff,**

v.

**BLUFFTON BANNER NEWSPAPER; Jim Barberri, Editor; The Farmer (Magazine); the Webb Company: M.J. Nelson, Investigative Reporter, Defendants.**

**Nos. F 84–218, S 83–443.**

United States District Court,
N.D. Indiana,
South Bend Division.

Nov. 6, 1985.

---

Alexander Gaus, Jr., pro se.

David A. Arthur, Deputy Atty. Gen., Indianapolis, Ind., Thomas C. Ewing, Fort Wayne, Ind., Jon M. Brown, Bluffton, Ind., John T. Mulvihill, South Bend, Ind., Scott Goldsmith, Minneapolis, Minn., for defendants.

## MEMORANDUM AND ORDER

ALLEN SHARP, Chief Judge.

On September 27, 1983, the plaintiff filed his complaint in S 83–443. That complaint appeared to allege claims for libel, slander and defamation of character under Indiana law and were based on alleged false and misleading publications made by the defendants. The complaint also alleged that the defendants violated plaintiff's rights under the Sixth and Fourteenth Amendments of the Constitution of the United States. A pretrial conference was held in S 83–443 on January 3, 1984. The plaintiff attended the pretrial conference and testified under oath. Based on the record and testimony of plaintiff, the court determined

that the claims asserted by plaintiff in that case were based on defamation of character under Indiana law and were not brought under 42 U.S.C. § 1983. Such a determination was compelled by the fact that the defendants were not acting under color of state law as required by § 1983 and that defamation of character cannot form the basis of a claim under 42 U.S.C. § 1983. *See Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976); *Bone v. City of Lafayette,* 763 F.2d 295 (7th Cir.1985). At the pretrial conference, defendant Walter Aeschliman was dismissed.

On August 31, 1984, S 83–443 was consolidated with F 84–218. The complaint in F 84–218 alleged claims under 42 U.S.C. § 1983 based on alleged actions by the defendants in connection with the prosecution of the plaintiff in Wells County, Indiana. The defendants filed Motions for Summary Judgment on various grounds. The plaintiff has filed responses thereto. On June 10, 1985, this court preliminarily dealt with the statute of limitations issues in these consolidated cases but found that the record needed to be more fully developed, particularly with respect to the effect of plaintiff's imprisonment on the application of the statute of limitations in these cases. The parties have complied with the court's request. Because of the different claims being asserted in the consolidated cases, each of the cases will be dealt with separately.

### A. *Alexander Gaus, Jr. v. Wells County et al, F 84–218*

█ In this case, plaintiff alleged a cause of action under 42 U.S.C. § 1983 against the defendants for their action or inaction with respect to the arrest, prosecution and conviction of plaintiff in Wells County, Indiana. The plaintiff's statement of his claim as set forth in his complaint is as follows:

Defendants conspired together to injure Plaintiff in his person and property by false accusation, contrary to law, subsequently prosecuting Plaintiff wrongfully, having knowledge that wrongful acts were being committed. Defendant Boonstra minipulated said prosecution, wrongfully and malicious, to further (his) ambitions politically, causing publications in the news media and appearing in the news media propogating false statements, all contrary to Plaintiff's guarantee pursuant to the First and Fourteenth Amendment. Defendants deprived Plaintiff of federal right, acting under color of state and/or county law. Prosecution of Plaintiff was conducted with intent of denying Plaintiff equal protection (and) otherwise subjecting Plaintiff to denial of constitutional rights. Defendants had no legal jurisdiction over Plaintiff and had no legal right to prosecute Plaintiff pursuant to the statutes of the State of Indiana. Defendants knowingly violated Plaintiff's rights to fair trial, proper venue, conflict of interest relating to witnesses, attorneys; falsifying documents, threatening legitimate witnesses in behalf of Plaintiff with harassment and jail (if) said witness risked the appearance in Wells County in behalf of the Plaintiff herein. Defendant Boonstra used Plaintiff as "pawn"—and illegal prosecution—as publicity vehicle to seek nomination, and election, to the Indiana Legislature. Boonstra misrepresented facts and violated Plaintiff's federal rights in blatant exercise to "scapegoat" Plaintiff politically, widespread in the media—appearing in television, contacting media nationally (all) in effort to attain political success. The County of Wells, as a political subdivision and (as) individuals were always aware of the complete misbehavior, however, refrained from correcting the violations against the Plaintiff. Defendants (in concert) conspired to injure Plaintiff in order to cover apparent questionable practices in Wells County unrelated to Plaintiff. Plaintiff has been incarcerated without cause, subjected to personal abuse, not having committed a crime. Boonstra was ultimately thwarted in his political bid and resigned as prosecutor from the County of Wells.

The defendant, Michael E. Boonstra, was dismissed on October 31, 1984 on the basis

of immunity. Accordingly, the court need only focus on the allegations concerning the remaining defendants. Reading these allegations in the light most favorable to plaintiff reveals that the complained of actions all stemmed from the arrest, prosecution and conviction of plaintiff in Wells County, Indiana.

The following undisputed facts appear in the record of this case. Alexander Gaus, Jr. (Gaus) was indicted by a grand jury on 18 counts of fraud in December, 1978. On December 28, 1978, the indictment was filed and a warrant for his arrest was issued the same day. On March 27, 1979, Gaus surrendered to the Sheriff of Wells County and on the same day was released from custody on bond. Alexander Gaus, Jr. was convicted by a jury in the Wells Circuit Court on January 6, 1982 and was sentenced and committed to the Indiana Department of Correction on March 1, 1982. The complaint in this case was filed on July 18, 1984.

In *Wilson v. Garcia,* —— U.S. ——, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985), the Supreme Court of the United States held that all claims under 42 U.S.C. § 1983 were best characterized as "personal injury actions" and the applicable statute of limitations was to be determined pursuant to state law. *Id.*[1] In Indiana, the statute of limitations governing "injuries to person or character" is found at I.C. § 34–1–2–2. That statute provides that an action for personal injury must be commenced within two years after the cause of action accrues. I.C. § 34–1–2–2(1).[2] The issue therefore is when does a cause of action accrue under Indiana law.

Although the Supreme Court of Indiana has indicated that a discovery rule is applicable in some personal injury tort cases, see *Barnes v. A.H. Robins Co., Inc.,* 476 N.E.2d 84 (Ind.1985), the general rule that a cause of action accrues when the resultant damage of a negligent act is ascertainable or by due diligence could be ascertained, is still applicable to the majority of personal injury tort cases, including this case. *See, id.* at 86; *Tolen v. A.H. Robins Co., Inc.,* 570 F.Supp. 1146 (N.D.Ind.1983). Furthermore, there are no facts in this record that would indicate that the statute of limitations was tolled in this case. Prior to 1982, any person under a legal disability when his cause of action accrued could bring his action within two years after the disability was removed and the term "under legal disabilities" included persons imprisoned in the state's prisons. I.C. § 34–1–2–5; I.C. § 34–1–67–1. However, effective January 1, 1982, imprisonment was eliminated from the description of legal disability. Plaintiff was not imprisoned until March of 1982 which was after the statute had been amended and cannot rely on imprisonment as grounds for tolling the statute of limitations in this case. *Cf. Bailey v. Faulkner,* 765 F.2d 102 (7th Cir. 1985).

Applying the foregoing analysis to the facts of this case clearly indicates that plaintiff's claims are barred by the applicable statute of limitations. At the very latest, plaintiff knew or should have known of the injuries attending the alleged violations of his constitutional rights with respect to his arrest, prosecution and conviction on January 6, 1982 when the Wells County jury returned the guilty verdict. Plaintiff

---

**1.** Although *Wilson v. Garcia,* —— U.S. ——, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985), is not to be applied retroactively, *see, e.g., Winston v. Sanders,* 610 F.Supp. 176 (C.D.Ill.1985), that does not affect the determination of the appropriate statute of limitations to be applied in this. Prior to *Wilson v. Garcia,* Indiana had applied the two year statute of limitations to civil rights cases under 42 U.S.C. § 1983 so the *Wilson* case only reaffirmed the posture previously adopted in Indiana with respect to such cases.

**2.** There is some doubt as to whether the decision in *Blake v. Katter,* 693 F.2d 677 (7th Cir. 1982) remains valid in the context of cases filed against police officers under 42 U.S.C. § 1983. It is the view of this writer that *Wilson v. Garcia,* undermines the basic holding in *Katter.* Whether it does so retroactively is a question to be saved for a later day. In this case it is unnecessary to reach that question. In this case the defendants simply are not within the reach of *Blake v. Katter* assuming its continued validity.

knew who was prosecuting this case, having appeared in court on more than one occasion with the Wells County prosecutor. Plaintiff did not file his complaint in F 84–218 until July 18, 1984, more than two and one-half years later. Accordingly, defendants' Motion for Summary Judgment on the grounds that this case is barred by the applicable statute of limitations is GRANTED. Plaintiff's complaint is hereby DISMISSED. Costs shall be assessed against the plaintiff.

### B. *Alexander Gaus, Jr. v. Bluffton Banner Newspaper et al, S 83–443*

#### 1. *Statute of Limitations*

■ In this case, the plaintiff alleged a cause of action against the defendants for defamation of character based on alleged false and misleading publications made by defendants from November of 1978 through and including 1983. The statute of limitations applicable to this case is I.C. § 34–1–2–2(1), which provides that an action for injury to character must be brought within two years after the cause of action accrues. Further, the same analysis with respect to tolling as discussed above would apply to this case and requires the court to find that the plaintiff is not entitled to have the statute tolled in this case. The complaint in this case was filed on September 27, 1983. Accordingly, all of plaintiff's claims based on alleged defamatory articles published prior to September 27, 1981 are barred by the statute of limitations.

#### 2. *Personal Jurisdiction*

On April 2, 1984, defendants, The Webb Company and M.J. Nelson filed a Motion for Summary Judgment on personal jurisdiction grounds as well as the statute of limitations grounds discussed above. The plaintiff received the notice required by *Lewis v. Faulkner*, 689 F.2d 100 (7th Cir. 1982) and filed his response. In their motion, the Webb Company and M.J. Nelson maintain that they did not have sufficient minimum contacts with the State of Indiana upon which to base the exercise of personal jurisdiction. Further, M.J. Nelson asserts that she has never been served with a Summons or Complaint in this case.

The exercise of personal jurisdiction over M.J. Nelson and The Webb Company, if at all, must be based on the provisions of Trial Rule 4.4 of the Indiana Rules of Procedure. Fed.R.Civ.Proc. 4(e); *Madison Consulting Group v. State of South Carolina*, 752 F.2d 1193, 1195 (7th Cir.1985). Trial Rule 4.4 provides in pertinent part as follows:

TRIAL RULE 4.4 SERVICE UPON PERSONS IN ACTIONS FOR ACTS DONE IN THIS STATE OR HAVING AN EFFECT IN THIS STATE

(A) Acts Serving as a Basis for Jurisdiction. Any person or organization that is a nonresident of this state, ... submits to the jurisdiction of the courts of this state as to any action arising from the following acts committed by him or his agent:

(1) doing any business in this state;

(2) causing personal injury or property damage by an act or omission done within this state;

(3) causing personal injury or property damage in this state by an occurrence, act or omission done outside this state if he regularly does or solicits business or engages in any other persistent course of conduct, or derives substantial revenue or benefit from goods, materials, or services used, consumed, or rendered in this state; ....

This rule was intended to extend the personal jurisdiction of the courts of Indiana to the limits permitted under the due process clause of the Fourteenth Amendment of the Constitution of the United States. *Oddi v. Mariner-Denver, Inc.*, 461 F.Supp. 306, 308 (S.D.Ind.1978). Accordingly, if the Constitution permits the exercise of personal jurisdiction over M.J. Nelson, the Indiana Long-Arm statute would authorize such exercise.

In *Madison Consulting Group v. State of South Carolina*, 752 F.2d 1193 (7th Cir. 1985), the Seventh Circuit Court of Appeals

discussed at length the various opinions of the Supreme Court of the United States and the Seventh Circuit on the issue of personal jurisdiction under the Fourteenth Amendment and this court need not repeat that discussion here. Further, although the discussion in that case centered around a case involving a business transaction, the underlying principles are equally applicable in this case. In order to assert personal jurisdiction over a nonresident defendant, that defendant must have sufficient minimum contacts with the forum state such that the exercise of personal jurisdiction does not offend traditional notions of fair play and substantial justice. *Id.* at 1198–99. In determining whether there are sufficient minimum contacts, the court must focus on the relationship between the defendant, the forum and the litigation and each defendant's contacts must be assessed individually. *Id.; Rush v. Savchuk,* 444 U.S. 320, 332, 100 S.Ct. 571, 579, 62 L.Ed.2d 516 (1980).

Further, in evaluating the minimum contacts in this case, the court must be guided by the companion opinions of the Supreme Court of the United States in *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984) and *Calder v. Jones,* 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984). In *Keeton,* the plaintiff Kathy Keeton filed a complaint in the United States District Court for the District of New Hampshire alleging that she had been libeled in five separate issues of defendant's, Hustler Magazine, Inc., (Hustler) magazine. Hustler was an Ohio corporation with its principal place of business in California. Hustler's contacts with the State of New Hampshire consisted of the sale of some 10 to 15,000 copies of Hustler magazine in that state each month. The Supreme Court of the United States found that defendant's circulation of magazines in the forum state was sufficient to support an assertion of jurisdiction in a libel action based on the contents of the magazine, even if "the single publication rule" was applied. 104 S.Ct. at 1478. Based on

the district court's finding that "[t]he general course of conduct in circulating magazines throughout the state was purposefully directed at New Hampshire, and inevitably affected persons in the state," the Supreme Court found that "[s]uch regular monthly sales of thousands of magazines cannot by any stretch of the imagination be characterized as random, isolated, or fortuitous." *Id.* at 1478. The Supreme Court also found the fact that the plaintiff was seeking to recover damages suffered in all the states in one suit to be relevant to the determination of whether it was "fair" to compel the defendants to defend the multistate lawsuit in New Hampshire seeking nationwide damages for all copies of the five issues. Further, in discussing the "fairness" of haling defendants into the forum state court, the Supreme Court noted that it depends to some extent on whether defendants' activities relating to the forum state are such that they give the forum state a legitimate interest in holding the defendants answerable on a claim related to those activities. Id. at 1479. Thus, because the plaintiff was suing, at least in part, for damages allegedly sustained in New Hampshire and New Hampshire had a significant interest in redressing injuries that actually occurred in New Hampshire, the Supreme Court found that New Hampshire could properly exercise personal jurisdiction over Hustler.

In *Calder v. Jones,* 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984), the Supreme Court of the United States focused on the "effects" of defendants' conduct in determining whether the forum court could properly exercise personal jurisdiction over nonresident defendants. The plaintiff, Shirley Jones, lived and worked in California. Two of the defendants, Iain Calder and John South, were residents of Florida. John South, a reporter employed by the National Enquirer, Inc. (Enquirer) wrote a first draft of an article about Shirley Jones. He did most of the research for the article in Florida, relying on phone calls to California for the information contained in the

**1468**

article.[3] Iain Calder approved the subject matter of the article and edited it into final form. Said article was published in the October 9, 1979 issue of the Enquirer. Approximately 600,000 copies of the Enquirer out of total sales of five million copies were sold in California, nearly twice as many as any other state. Shirley Jones filed suit in a California state court alleging claims for libel, invasion of privacy and intentional infliction of emotional harm. In holding that personal jurisdiction could properly be exercised in California over the Florida residents, the Court noted that the alleged libelous story concerned the California activities of a California resident whose career was centered in California. The Court further noted that the article was drawn from California sources and that the brunt of the harm occurred in California. Accordingly, the Court found that the defendants' intentional, and allegedly tortious, conduct was expressly aimed at California and that the defendants knew that the brunt of the injury would be felt in the state where Shirley Jones lived and worked and in which the Enquirer had its largest circulation. Thus, the Court concluded that under such circumstances the defendants must reasonably anticipate being haled into court to answer the suit in the state in which the wrongdoing was intentionally directed. *Id.* at 1487.

With this background in mind, the court now turns to the facts in this case. The record in this case reveals that M.J. Nelson is a Minnesota resident. She has passed through Indiana while traveling to other states on a few occasions unrelated to this case. Nelson is an independent investigative reporter and researched and wrote the articles that were published by *The Farmer* that are the subject of this case. Lon Tonneson, an associate editor for *The Farmer* assisted M.J. Nelson on a number of the subject articles. M.J. Nelson made less than ten phone calls to the Chief Investigator of the Indiana Securities Commission and one telephone call to the editor of

an Indiana newspaper with respect to the articles in question. In response to the telephone call to the editor, M.J. Nelson received previously published articles about the plaintiff. The articles that form the basis of this lawsuit were prepared from personal and telephone interviews conducted by Nelson and Tonneson. Most of the information contained in said articles was obtained through voluntary statements given by individuals who were not residents of Indiana. The information concerned finder's fee loan practices, the primary subject of the articles. No research was conducted in Indiana. The plaintiff is not a resident of the State of Indiana. The Webb Company is a Delaware corporation and publishes a magazine in St. Paul, Minnesota entitled *The Farmer* which contained the allegedly defamatory articles. The plaintiff alleged in an "Affidavit in Support of Complaint" that *The Farmer* was circulated in Minnesota, North Dakota, and Pennsylvania. Attached to the defendants' motion for summary judgment was the affidavit of Jack Kinderwater, the publisher of *The Farmer*. Attached to his affidavit was a summary of the circulation of *The Farmer* for the years December 1981 through 1983. That summary discloses that in 1981 there were 163,303 paid subscriptions to *The Farmer*, sixteen of which were sent to Indiana. In 1982, there were 150,126 paid subscriptions of which seventeen were sent to Indiana. In 1983, there were sixteen paid subscriptions sent to Indiana out of a total paid subscriptions of 146,400. The sending of *The Farmer* to those individuals in Indiana that had a paid subscription as indicated above plus some very limited circulation in Indiana that was not paid for is the only contact The Webb Company had with Indiana. The circulation summary also discloses that in 1981, 100,540 copies of a total circulation of 166,836 were sold or distributed in Minnesota and another 61,803 were sold or distributed in North and South Dakota. In 1982, a total of

---

**3.** John South frequently traveled to California on business. The Supreme Court did not discuss whether this defendant's contacts were sufficient in themselves so as to permit the exercise of personal jurisdiction since it relied on an "effects" test. 104 S.Ct. at 1486 n. 6.

153,479 copies per issue were sold or distributed of which 92,653 were in Minnesota and another 56,925 in North and South Dakota. In 1983 *The Farmer* had a total circulation of 149,813 of which 89,832 were sold or distributed in Minnesota and another 56,313 in North and South Dakota.

■ Based on these facts, this court concludes that M.J. Nelson did not have sufficient minimum contacts with the State of Indiana to permit this court to exercise personal jurisdiction over her. Nelson's only contacts with Indiana with respect to the articles in question were telephone calls that sought public information. *Cf. Koster v. Automark Industries, Inc.*, 640 F.2d 77 (7th Cir.1981). Nor could M.J. Nelson be subject to personal jurisdiction under the "effects" test in *Calder v. Jones, supra.* The articles in question were not aimed at Indiana but rather were aimed at Minnesota, North Dakota and South Dakota and concerned finder's fee loan practices. The plaintiff was referred to in said articles because of his alleged connection with such practices but he was not the primary subject of the articles. Alexander Gaus, Jr. was a resident of Illinois, not Indiana, and maintained his office in Chicago, Illinois. The circulation of *The Farmer* in Indiana was minimal. Research was not done in Indiana nor were the articles based on information drawn from Indiana residents. Accordingly, M.J. Nelson had no reasonable expectation of being haled into court in Indiana and to require this defendant to defend this action in Indiana would place a burden on Nelson that would not be fair or reasonable. It would not be convenient for M.J. Nelson nor does Indiana have a particular interest that would be served by requiring Nelson to defend this case here. Neither party is a resident of Indiana and from his pleadings, it does not appear that the plaintiff is seeking damages for injuries, if any, sustained in Indiana. Accordingly, the maintenance of this suit against this defendant would offend ".traditional notions of fair play and substantial justice" ànd this defendant must be dismissed for lack of personal jurisdiction.

■ The record in this case reveals the same result must be reached with respect to The Webb Company. The Webb Company does not regularly do business in Indiana or derive substantial revenue or benefit from the State of Indiana. Based on the very limited paid subscriptions sent to Indiana, The Webb Company had no reasonable expectation of being haled into court in Indiana to defend in a case such as this. The contacts of The Webb Company with Indiana are not sufficient to permit this court to exercise personal jurisdiction over this defendant and to require this defendant to defend this action in Indiana would place a burden on The Webb Company that would not be fair nor reasonable. It would not be convenient for The Webb Company nor does Indiana have a particular interest that would be served by requiring The Webb Company to defend this case here. The principles announced in *Keeton v. Hustler Magazine, Inc., supra,* do not apply since the plaintiff is not seeking damages for injuries, if any, that occurred in Indiana. Accordingly, the maintenance of this suit against this defendant would offend "traditional notions of fair play and substantial justice" and this defendant must be dismissed for lack of personal jurisdiction.

For the foregoing reasons, the Motion for Summary Judgment filed by M.J. Nelson and The Webb Company on the ground that this court lacked personal jurisdiction over these defendants is GRANTED. M.J. Nelson and The Webb Company are hereby DISMISSED. Costs shall be assessed against the plaintiff.

3. *Qualified Privilege of Expression under the First Amendment of the Constitution of the United States*

The defendants, Bluffton Banner Newspaper a/k/a Evening News-Banner and Bluffton News-Banner (Bluffton Banner), and James Barberri, Editor a/k/a James Barbieri—Editor (Barbieri), moved for summary judgment on the grounds that they are shielded from liability on the basis of a constitutional privilege for the alleged de-

famatory or libelous statements made by them. The plaintiff filed a response to this motion basically maintaining that there were genuine issues of material fact that must await trial.

The constitutional guarantees of freedom of speech and press primarily grounded in the First Amendment of the Constitution of the United States form the basis for a qualified privilege for all media expression. This qualified privilege imposes limitations on state libel laws and began with the landmark case of *New York Times Co. v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). In the *New York Times* case, the Supreme Court of the United States held that a public official must prove by clear and convincing evidence that a defamatory falsehood relating to his official conduct was published with "actual malice" in order to recover damages therefor. *Id.* at 279–80, 84 S.Ct. at 725–26. To establish actual malice, a plaintiff must prove that the defendant published a statement with actual knowledge of its falsity or with reckless disregard for whether it was false or not. *Id.* at 280, 84 S.Ct. at 726. In reaching that conclusion, the Supreme Court recognized that factual error is inevitable in free debate and must be countenanced in order to prevent self-censorship and its chilling effect on freedom of expression.

In later cases explaining and defining the concept of "reckless disregard", the Supreme Court explicitly rejected a negligence standard for satisfying the "actual malice" requirement. *Garrison v. Louisiana*, 379 U.S. 64, 85 S.Ct. 209, 13 L.Ed.2d 125 (1964). Rather, the Court held that "reckless disregard" may be found if the defamatory falsehoods were published with a "high degree of awareness of their probable falsity," *id.* at 74, 85 S.Ct. at 215, or if the defendant publisher "in fact entertained serious doubts as to the truth of his publications." *St. Amant v. Thompson*, 390 U.S. 727, 731, 88 S.Ct. 1323, 1325, 20 L.Ed.2d 262 (1968).

In 1967, the "actual malice" standard first enunciated in *New York Times Co. v.*

*Sullivan* was held equally applicable in cases involving "public figures" who were not "public officials." *Curtis Publishing Co. v. Butts*, 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094 (1967). In *Rosenbloom v. Metromedia, Inc.*, 403 U.S. 29, 91 S.Ct. 1811, 29 L.Ed.2d 296 (1971), the *New York Times* rule was further extended to cover individuals who were not "public figures" or "public officials." In *Rosenbloom*, the Supreme Court focused on the subject matter of the publication rather than the plaintiff's status as a "public" or "private" figure and held that the actual malice standard applied if the publication concerned a matter of public interest.

In *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974), the Supreme Court again addressed the proof necessary to recover on an action based on libel and indicated that a less demanding standard than the *New York Times* actual malice standard would be constitutionally permissible. The *Gertz* Court held that the individual states would be allowed to determine the appropriate standard of liability for publishers of defamatory falsehoods. In guiding the states, the Court stated that a simple negligence standard would be acceptable but that liability without fault and libel *per se* were inappropriate standards of liability. *Id.* at 346–47, 94 S.Ct. at 3010–11.

In response to the *Gertz* opinion, the Court of Appeals of Indiana acted on the substantial latitude given by the Supreme Court of the United States and defined the appropriate standard of liability for media libel actions in Indiana. In *AAFCO Heating and Air Conditioning Co. v. Northwest Publications, Inc.*, 162 Ind.App. 671, 321 N.E.2d 580 (1974), *cert. denied*, 424 U.S. 913, 96 S.Ct. 1112, 47 L.Ed.2d 318 (1976), the court explicitly adopted the standard set forth in *Rosenbloom v. Metromedia, Inc.*, 403 U.S. 29, 91 S.Ct. 1811, 29 L.Ed.2d 296 (1971) in which the *New York Times* rule applied to all publications concerning an event or topic of general or public interest. Thus, in Indiana the law is clear that if a publication concerns a matter

of general or public interest, it is privileged. In order to overcome the privilege, the plaintiff must prove actual malice by clear and convincing evidence. *Id.*, 162 Ind.App., at 679, 321 N.E.2d at 586. Further, whether a matter is of general or public interest for purposes of applying the actual malice standard is a determination to be made by the trial courts. *Id.* at 686, 321 N.E.2d at 590. Furthermore, the use of summary judgment is appropriate in libel actions because of the "chilling effects" such suits have on First Amendment rights. *See Fadell v. Minneapolis Star & Tribune Co.*, 425 F.Supp. 1075 (N.D.Ind. 1976), *aff'd*, 557 F.2d 107 (7th Cir.1977), *cert. denied*, 434 U.S. 966, 98 S.Ct. 508, 54 L.Ed.2d 452 (1977).

In this case, the plaintiff has not identified what article or articles or what information contained in those articles he maintains was defamatory. Rather, in a document attached to the complaint entitled "Affidavit in Support of Complaint" the plaintiff stated in pertinent part as follows:

2. Reports and publications noted specific libel as relates to personal affiliations, associates, religious organizations, business mens groups; slandering without proof or substance:

(a) Church

(b) Full Gospel Business Mens Fellowship, International.

(c) Private religious beliefs—and slander (libel) against family of Plaintiff.

3. False publication of association with less than desirable people and organizations.

4. False and libelous publications as to activities, personal (and business) affiliations that did not exist; elaborated to include activities completely foreign to Plaintiff, his family, or legitimate ties.

5. Libel as to alleged ties to:

(a) Mafia

(b) Cosa Nostra

(c) Syndications involved in merchandising stolen equipment.

7. Libelous statements as to unrealistic amounts of monies; commencing with 25 millions of dollars, fluctuating to 500 thousand, to 250 thousand, to 50 thousand—none of which supported by fact.

In his response to the pending motion for summary judgment, the plaintiff stated as follows with respect to alleged defamatory statements:

Plaintiff submits herewith, pursuant to Order of the Court,—and sets forth specific facts showing genuine issue for trial—to wit:

(a). (T)hat federal law enforcement agencies concerted with elements of the mob to aid Gaus' early release from United States Penitentiary, Terre Haute, Indiana. Defendants are legally obligated to show such protocol exists.

(b). Plaintiff (was) involved, and associated. with one Dominick Santarelli; Paul "The Waiter" Ricca and Tony "Big Tuna" Accardo, top bosses of the Chicago crime syndicate.

(c). Plaintiff was "a link" with Carlos Marcello (the mob chieftain recently convicted in the Brilab case in New Orleans).

(d). Plaintiff was associate of Sam Giancana, Las Vegas mob boss.

(e). Plaintiff was connected with gangland-style murdering of two coal operators, one in Kentucky and one in Alabama.

(f). Plaintiff being a fund raiser for the mob.

(g). Plaintiff was involved in a takeover attempt of the Gateway National Bank of Chicago, using worthless securities as collateral.

(h). Plaintiff employed the Name and organization of the Full Gospel Businessmen's Fellowship International as a means to enter the homes and place(s) of business, of persons and parties to extract funds or investment capital illegally.

The aforementioned lies were originally published by the Bluffton New-Banner and Jim Barbieri. . . .

The plaintiff did not identify what issue or issues of the Bluffton Banner that these alleged "lies" appeared in.

On November 16, 1983, plaintiff filed a motion requesting this court to enter an order requiring defendants to submit for the record and make available to plaintiff "all records and information relative to the allegations cited in the complaint" and then included a list of some of the items sought. The defendants, the Bluffton Banner and Barbieri, filed a response on January 19, 1984 indicating that they were uncertain as to what the plaintiff was requesting but attached to said response copies of all articles appearing in the Bluffton Banner concerning the plaintiff that were published after September 27, 1981.

 This court has carefully reviewed every article appearing in the Bluffton Banner that was produced in response to the plaintiff's motion. That review discloses that the articles were centered around the plaintiff's actions vis-a-vis members of the public. More particularly, the articles related to the trial of Alexander Gaus, Jr. in Wells County, Indiana for violation of the security laws of the State of Indiana and Gaus' criminal activity in other states. Accordingly, those publications concerned a matter of general or public interest and the actual malice standard would apply and the publication would be protected by the qualified privilege described above unless the plaintiff proves by clear and convincing evidence that the alleged defamatory falsehoods were published with actual malice.

This court has carefully reviewed the entire record in this case, paying particular attention to the filings made by plaintiff. On the basis of that review, the court finds that the plaintiff has failed to raise a genuine issue for trial with respect to Bluffton Banner and/or Barbieri entertaining serious doubts as to the truth of the articles. The plaintiff has the burden of proving "actual malice" on the part of these defendants and the record discloses that plaintiff *cannot* prove actual malice in the *New York Times* sense.

Accordingly, for the foregoing reasons, the motion for summary judgment filed by the Bluffton Banner Newspaper and James Barbieri is hereby GRANTED and Judgment shall be entered for said defendants against the plaintiff. Costs shall be assessed against the plaintiff.

SO ORDERED.