**NAKED CITY, INC., Dick Drost, Melinda Bohanon, Florence Gay Slater, Plaintiffs,**

v.

**Greg AREGOOD, et al., Defendants.**

**No. L 87–56.**

United States District Court, N.D. Indiana, South Bend Division.

Aug. 21, 1987.

Douglas Palaschak, Ventura, Cal., for plaintiffs.

Kathryn B. O'Neall, Remington, Ind., Anthon S. Benton, Lafayette, Ind., Harry J. Jennings, Merillville, Ind., Jason L. Horn, Highland, Ind., Daniel C. Blaney, John T. Casey, Morocco, Ind., David A. Arthur, Deputy Atty. Gen., Indianapolis, Ind., for defendants.

## MEMORANDUM AND ORDER

ALLEN SHARP, Chief Judge.

### I.

This case is before the court on the plaintiffs', Naked City, Inc., Dick Drost, and Florence Gay Slater, request for preliminary injunctive relief. The complaint was filed on May 22, 1987. On June 18, 1987, the plaintiffs requested a preliminary injunction. On June 22, 1987, the court scheduled an evidentiary hearing for July 10, 1987, and that hearing was rescheduled for July 30, 1987. A subsequent request for a temporary restraining order was filed on July 17, 1987. Some of the thirty-seven named defendants filed a response on July 24, 1987. In addition, two defendants filed an answer and alleged that the plaintiffs failed to state a claim upon which relief could be granted. This memorandum is limited solely to the issue of preliminary injunctive relief and is not intended to make any final determination of the merits of any of the plaintiffs' claims.

The facts relevant to the requested preliminary injunction are derived solely from the verified complaint, sworn affidavits, and certified copies of a plea agreement and orders entered in several state court proceedings. None of the parties called any witnesses or presented evidence during the July 30, 1987, hearing.[1] During that hearing the plaintiffs' counsel stated that he believed that the facts could be stipulated to, but no such stipulation was entered or made orally.

The record in this case discloses the following facts relevant to the issue of preliminary injunctive relief. The county and state police, through the alleged use of undercover investigators, "raided" the three hundred and sixty acre tract of land in Newton County referred to as Naked City several times. The plaintiffs allege

---

1. The plaintiffs' attorney and the Court had the following dialogue:

MR. PALASCHAK: Well, I don't have any witnesses to call today. Dick Drost was afraid to come to Indiana, and our request for temporary restraining order to permit him to come to Indiana was not treated. So—

THE COURT: When did you ask for a temporary restraining order for Richard Drost to come to Indiana from this Court?

MR. PALASCHAK: It was filed July 17.

The request for relief filed July 17, 1987, does not include a request to permit the plaintiff Dick Drost to attend the scheduled hearing for the purpose of giving testimony relevant to the merits of any preliminary injunctive relief. On June 18, 1987, the plaintiffs filed an "Application For Order To Show Cause" which asked the defendants to appear and "to show cause why the relief requested in the proposed order should not be granted." In the proposed "Order After Show Cause Hearing" submitted with the plaintiffs' motion the following paragraphs were included:

o) that Newton County Attorneys, Newton County Courts, Newton County Judges, Newton County Sheriff (and deputies), Indiana State Police, and their agents and cohorts refrain from arresting, stopping, detaining, assaulting, talking to, or otherwise interfering with parties and attorneys in this action while they are going to and from court, Naked City, and their homes during the duration of this case (except that Newton County Attorneys may communicate with plaintiff Attorneys and police may not deny protection to plaintiff when requested by plaintiffs);

p) that Newton County Attorney, Newton County Courts, Newton County Judges, Newton County Sheriff and Deputies, and Indiana State Police permit Dick Drost to visit his dying Father, Albin Drost at Naked City until Albin dies pursuant to the emergency provisions of Dick's plea bargain;

q) that Newton County Courts, Judges, and Sheriffs (and deputies), and Indiana Police refrain from punishing Dick for visiting Albin, Dick's dying father;

r) that Newton County Attorneys, Newton County Judges, Newton County Sheriffs (and deputies), and Indiana State Police refrain from interfering with Dick's attendance at Naked City whenever he is accompanying his caretaker, Florence Slater, while Florence is preparing for activities at Naked City or while Florence is conducting the Miss Nude World Contest or any other event at Naked City (also known as Adam and Eve);

s) that all Indiana state court judges and Indiana state and local police refrain from arresting, detaining, touching, imprisoning or otherwise interfering with Dick Drost while he is in Indiana or any other state pending a determination of the validity of the court-imposed banishment from the state of Indiana and the validity of the court-imposed forfeiture of Naked City;

That relief was requested in the preliminary injunction request, and an exhaustive search of the record fails to disclose any request for a temporary restraining order to permit Mr. Drost to come to Indiana specifically to provide evidence at the hearing on the request for a preliminary injunction.

that personal property in the form of tapes and equipment have been taken during the "raids". Specifically the plaintiffs allege Seventy-five Thousand Dollars ($75,000) worth of equipment was taken on April 14, 1980. In addition, the "joint" affidavit alleges that a friend of a friend of the plaintiffs said that the sheriff sold the plaintiffs' equipment. The plaintiffs complain that they did not receive notice of the sale. As a result of those "raids" and investigations, the plaintiffs, Richard Drost and Naked City, Inc., were charged with several violations of Indiana Criminal Statutes under cause numbers SPRS 81–77, SPRS 81–78, SPRS 85–58, SPRS 85–81 and SPRS 86–43. On January 13, 1982, each defendant entered a guilty plea to certain misdemeanor charges and one Class D felony charge under cause numbers SPRS 81–77 and SPRS 81–78. The defendants were sentenced on February 16, 1982. The defendants appealed seeking modification of the sentence. *See, Naked City, Inc. v. State of Indiana,* 460 N.E.2d 151 (Ind.App. 3 Dist. 1984). The Indiana Court of Appeals affirmed the convictions but reversed and remanded for resentencing. Subsequently, the defendant, Drost, filed a petition for post-conviction relief which was granted on November 26, 1984. On March 24, 1986, a plea agreement was filed in the Newton County Superior Court under cause numbers SPRS 81–77, SPRS 81–78, SPRS 85–58 and SPRS 85–81. That plea agreement was signed by Richard Drost individually and as agent for Naked City, Inc., as well as Richard Drost's attorneys, Frederick Cohn, Patricia Riley and John B. Wilson. In addition, the prosecuting attorney R. Steven Ryan signed the plea agreement. Paragraphs nineteen (19), twenty-three (23) and twenty-four (24) of the plea agreement state:

19. That defendant hereby states that at the time of the execution of this agreement, he is not under the influence of intoxicating liquors, drugs, or medication which might effect (sic) his comprehension and understanding of the terms herein stated.

23. The defendant hereby acknowledges that this plea agreement is entered into knowingly, voluntarily, intelligently, and that no threats or promises other than those contained herein have been made to him to force him to do so; that he has full knowledge of its consequences and has been advised by counsel of his constitutional right; to trial by Court or jury, presumption of innocence, to have the charges to be proved against him beyond a reasonable doubt, to the right to remain silent, to see and hear the witnesses against him and to cross-examine them, the right to subpoena witnesses on his behalf, the right to assistance of counsel at all important stages, including appeal, if convicted by trial, and the right to pauper counsel if he cannot afford one, all said rights being guaranteed to the defendant in regard to each and every charge.

24. The defendant and his counsel state that they have fully and completely discussed the alternatives to trial and that their decision to enter into this plea agreement is made by the defendant of his own free will, without duress or coercion and with the advise (sic) and assistance of his attorneys.

On the same day the same parties signed and filed in open court an "Addendum to Plea Agreement". Subsequently, Permanent Pro Tem Judge, Stephen Bower, entered an Order on April 1, 1986, which is consistent with the plea agreement. That Order sentenced the defendants, Richard Drost and Naked City, Inc., to a period of confinement of "one (1) year in each of the above ten (10) charges. The sentences of imprisonment shall be served consecutively." Further, that Order held that "[s]aid sentences were suspended and the defendant is placed on probation for said period of time upon the following terms and conditions." The terms and conditions which are alleged to be relevant in this case are:

8. That the business known as Naked City, Inc., in Roselawn, Newton County, Indiana, be closed instanter. The big sign in front shall be painted off by Monday evening, March 31, 1986.

9. That the Defendant offer for sale and sell either at public or private sale all

real estate owned personally by Richard Drost or Naked City, Inc. and any other business or businesses within the State of Indiana in which he is the sole proprietor or controlling stockholder.

10. Further, the Defendant, Richard Drost, voluntarily agrees to remain out of the State of Indiana for a period of Ten (10) years from the date of this sentence, as a condition of probation. Provided, that in an emergency situation and upon prior approval of the Newton Superior Court, the Defendant may return to the State of Indiana for a reasonable period of time as directed by said Court.

Apparently, Judge Bower's Order, sentence and probation have never been appealed in the state courts of Indiana although appellate remedies are readily available.

The plaintiffs premise their request for preliminary injunctive relief upon "the 41 page complaint filed 22 May 1987," a "joint" affidavit of plaintiffs Dick Drost and Florence Slater, an affidavit of an individual named Donald Penden which was accompanied by photographs of unknown origin, and "evidence and testimony to be presented at the hearing." However, there was no evidence or testimony presented at the hearing. A brief summary of the counts which remain [2] in the forty-one (41) page complaint is attached as Appendix A. The "joint" affidavit which the plaintiffs submitted is attached as Appendix B. It is readily apparent from examination of Appendices A and B that a substantial portion of the allegations in the complaint and statements in the affidavit are either hearsay or conclusory statements unsupported by fact.

In response to the plaintiffs' allegations and affidavits, some of the defendants [3] filed certified copies of court orders and opinions, and affidavits. Two of the defendants filed a thorough answer denying the plaintiffs' allegations and raising the

following defenses: failure to state a claim pursuant to 12(b)(6); federal and state statute of limitations; these two defendants were not acting under color of state law; laches; improper venue; these two defendants acted in good faith and in lawful exercise of their rights under the First Amendment of the United States Constitution; and that the plaintiffs' complaint is without merit, frivolous, vexatious and constitutes harassment against these two defendants.

The relief sought, as expressed by plaintiffs' counsel during the evidentiary hearing and in the proposed order submitted with the request for a preliminary injunction is as follows:

a. that the Sheriff, the Indiana State Police, all persons who purchased property at the June 1987 sale or otherwise received property seized from Naked City during the last 7 years return the property (including video tapes and equipment valued at approximately $50,-000) to Naked City within 3 days of receipt of notice of this order;

b. that the Sheriff of Newton County account in writing to Attorney Douglas Palaschak within 4 days for all property seized from Naked City in the last 7 years;

c. that the Sheriff and Indiana State Police refrain from entering Naked City (Naked City meaning the approximately 300 acres in section 15, township 31 North, Range 8 West of the 2nd principal meridian in Lincoln Township, Newton County Indiana) without a constitutionally sound search warrant;

d. that the Sheriff and Indiana Police treat Naked City as private property respecting the 4th amendment rights of owners and guests of Naked City;

e. that the Sheriff and Indiana Police refrain from interfering with the exhibition of commercially available pornography to consenting adults at Naked City the court finding that such exhibition is

---

**2.** On August 13, 1987, pursuant to Rule 11 of the Federal Rules of Civil Procedure all allegations of named plaintiff Melinda Bohanon were stricken because she had not signed the complaint and no attorney authorized to represent her had signed the complaint on her behalf.

**3.** At the time of the hearing not all named defendants had been served with a copy of the complaint, consequently some of the defendants had not answered or otherwise pleaded.

neither obscene, commercial, nor public and hence beyond the purview of the courts;

f. that the Sheriff and Indiana Police refrain from spying on Naked City guests and owners through the use of undercover police or informants absent constitutionally sound court-ordered warrants;

g. that the Sheriff and Indiana Police refrain from interfering in private consensual lewd activity involving only adults in the privacy of Naked City;

h. that the Sheriff and Indiana Police immediately provide Dick Drost with a copy of the tape filmed by police at the raid of 2 May 1987;

i) that Newton County Attorney, Newton County Judges, and the Newton County Board of Commissioners and their agents and cohorts immediately cease further prosecution of cause number 56A03–8606–CV–157 or any other case regarding zoning violations against Drost, Naked City, or Drost's agents, or assignees unless the prosecutors also prosecute similar businesses (including the defendant Ponderosa Sun Club) similarly;

j) that Newton County Attorneys (part time and full time) (including defendants Blaney, Casey, Ryan, Falk, and their partners, employees, and agents) immediately stop taking private cases from Betty Porzell, the Ponderosa and all other Drost adversaries;

k) that the Newton County Welfare Agency immediately provide Drost with the address and telephone number of Melinda Bohanon;

l) that Newton County Sheriff Deputies, and Indiana State Police stop providing security at Ponderosa events unless security is offered to Naked City on the same terms;

m) that the Newton County Sheriff and the Indiana State Police provide notice of this order to their appropriate officers within 3 days of receipt of notice of this order;

n) that the Newton County Sheriff provide to Douglas Palaschak within 3 days of receipt of this order an accounting of the June 1987 sale of property seized from Naked City, such accounting to include names and addresses of purchasers, method of notice of sale, items sold, and purchase price;

o) that Newton County Attorneys, Newton County Courts, Newton County Judges, Newton County Sheriff (and deputies), Indiana State Police, and their agents and cohorts refrain from arresting, stopping, detaining, assaulting, talking to, or otherwise interfering with parties and attorneys in this action while they are going to and from court, Naked City, and their homes during the duration of this case (except that Newton County Attorneys may communicate with plaintiff Attorneys and police may not deny protection to plaintiff when requested by plaintiffs);

p) that Newton County Attorney, Newton County Courts, Newton County Judges, Newton County Sheriff and Deputies, and Indiana State Police permit Dick Drost to visit his dying Father, Albin Drost at Naked City until Albin dies pursuant to the emergency provisions of Dick's plea bargain;

q) that Newton County Courts, Judges, and Sheriffs (and deputies), and Indiana Police refrain from punishing Dick for visiting Albin, Dick's dying father;

r) that Newton County Attorneys, Newton County Judges, Newton County Sheriffs (and deputies), and Indiana State Police refrain from interfering with Dick's attendance at Naked City, Indiana whenever he is accompanying his caretaker, Florence Slater, while Florence is preparing for activities at Naked City or while Florence is conducting the Miss Nude World Contest or any other event a Naked City (also known as Adam and Eve);

s) that all Indiana state court judges and Indiana state and local police refrain from arresting, detaining, touching, imprisoning, or otherwise interfering with Dick Drost while he is in Indiana or any other state pending a determination of the validity of the court-imposed banishment from the state of Indiana and the

validity of the court-imposed forfeiture of Naked City;

t) that the Newton County bench consider the constitutional rights of plaintiffs herein when considering the merits of future search warrants for Naked City and that whenever possible the bench permit argument by plaintiffs herein prior to issuance of search warrants;

u) that Newton County Judge Daniel Molter remove himself from any case concerning Naked City, Dick Drost, Florence Slater, or their agents or assignees; and

v) that the Newton County Court change the guilty pleas for the Naked City eleven (arrested 2 May 1987) to no contest pleas or in the alternative that the Newton County Court order a new arraignment with a defense counsel who is not biased against Naked City;

w) that the Newton County Court immediately return the $5000 cash bond and $45,000 promissory note to Dick Drost and Florence Slater, the injunction having been overturned by the court of appeals on 14 May 1987 at the request of Attorney Fred Cohn; and

x) that the Newton County Court immediately return to Florence Slater the $2500 bond posted for 5 of the Naked City 11, the case having been completed and the defendants having already been sentenced. This order is to remain in effect until further order of this court.

## II.

The factors for analyzing a motion for preliminary injunctive relief, although the method of analysis and appellate review have been the subject of some debate in this circuit, have remained constant. *See, Chicago Board of Realtors, Inc. v. City of Chicago,* 819 F.2d 732 (7th Cir.1987); *Illinois Psychological Ass'n v. Falk,* 818 F.2d 1337 (7th Cir.1987); *Beermart, Inc. v. The Stroh Brewery Co.,* 804 F.2d 409 (7th Cir.1986); *Adams v. Attorney Registration and Disciplinary Commission of the Supreme Court of Illinois,* 801 F.2d 968 (7th Cir.1986); *Darryl H. v. Coler,* 801 F.2d 893 (7th Cir.1986); *A.J. Canfield Co. v. Vess Beverages, Inc.,* 796 F.2d 903 (7th Cir. 1986); *Lawson Products, Inc. v. Avnet, Inc.,* 782 F.2d 1429 (7th Cir.1986); *American Hospital Supply Corp. v. American Hospital Products, Ltd.,* 780 F.2d 589 (7th Cir.1986); *Roland Machinery Co. v. Dresser Industries, Inc.,* 749 F.2d 380 (7th Cir. 1984). Before a preliminary injunction may issue:

A plaintiff seeking a preliminary injunction must demonstrate: (1) a threat of irreparable harm without an adequate remedy at law; (2) some likelihood of success on the merits of the claim; (3) a balance of relative harm weighing in favor of granting the injunction; and (4) compatability (sic) of the injunction and the public interest. (citations omitted).

*Chicago Board of Realtors,* 819 F.2d at 735; *accord, BeerMart Inc. v. Stroh Brewery Co.,* 633 F.Supp. 1089, 1104 (N.D.Ind. 1986), *rev'd on other grounds,* 804 F.2d 409 (7th Cir.1986); *Lafayette Beverage Distributors v. Anheuser-Busch,* 545 F.Supp. 1137, 1146 (N.D.Ind.1982); *Eaton Corp. v. Appliance Valves Corp.,* 526 F.Supp. 1172 (N.D.Ind.1981), *aff'd* 688 F.2d 842 (7th Cir.1982). The Supreme Court of the United States in *Doran v. Salem Inn, Inc.,* 422 U.S. 922, 95 S.Ct. 2561, 45 L.Ed.2d 648 (1975), held:

The traditional standard for granting a preliminary injunction requires the plaintiff to show that in the absence of its issuance he will suffer irreparable injury and also that he is likely to prevail on the merits.

*Id.* at 931, 95 S.Ct. at 2568. The decision to grant or deny preliminary injunctive relief is committed to the sound discretion of the district judge. *Lawson Products,* 782 F.2d at 1436–37; *A.J. Canfield,* 796 F.2d at 905–906; *Adams,* 801 F.2d at 971. It must be remembered that there is no "right" to obtain a preliminary injunction. *Amoco Production Co. v. Village of Gambell, Alaska,* —— U.S. ——, 107 S.Ct. 1396, 1402, 94 L.Ed.2d 542 (1987); *Weinberger v. Romero-Barcelo,* 456 U.S. 305, 102 S.Ct. 1798, 72 L.Ed.2d 91 (1982).

The type of injunctive relief sought by the plaintiffs i.e. enjoining possible govern-

mental investigations, places a greater burden upon the plaintiffs. *See, Socialist Workers Party v. Attorney General of the United States,* 419 U.S. 1314, 1319–20, 95 S.Ct. 425, 428, 42 L.Ed.2d 627 (1974); *accord, Calvin v. Conlisk,* 520 F.2d 1 (7th Cir.1975), *rev'd and remanded on other grounds,* 424 U.S. 902, 96 S.Ct. 1093, 47 L.Ed.2d 307 (1976); *Calvin v. Conlisk,* 534 F.2d 1251 (7th Cir.1976). In *Socialist Workers Party,* the Court held that "[t]he dangers inherent in undercover investigation are even more pronounced when the investigative activity threatens to dampen the exercise of First Amendment rights." *Id.* at 1319, 95 S.Ct. at 428. The Court went on to hold: "our abhorrence for a bases of governmental investigative authority cannot be permitted to lead to an indiscriminate willingness to enjoin undercover investigations of any nature, whenever a countervailing First Amendment claim is raised." *Id.* In this case the plaintiffs have alleged that the governmental investigations violate their First Amendment rights. The requested relief would significantly affect the defendants ability to conduct criminal investigations.

■ It is clear, that to obtain an injunction against government activity a plaintiff must demonstrate "a persistent pattern of [governmental] misconduct." *Allee v. Medrano,* 416 U.S. 802, 815, 94 S.Ct. 2191, 2200, 40 L.Ed.2d 566 (1974); *accord, Rizzo v. Goode,* 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976); *see also, Hague v. Committee for Industrial Organization,* 307 U.S. 496, 59 S.Ct. 954, 83 L.Ed. 1423 (1939); *Schnell v. City of Chicago,* 407 F.2d 1084 (7th Cir.1969). The plaintiffs rely on the allegations contained in the complaint and statements included in the affidavits. Nevertheless, the record at this point does not support a finding of a persistent pattern of governmental misconduct. The conclusory allegations are not sufficient evidence to support the extraordinary relief requested by the plaintiffs. *Accord, Calvin v. Conlisk,* 534 F.2d 1251 (7th Cir.1976).

■ The plaintiffs request an order requiring "that whenever possible the bench permit argument by plaintiffs herein prior to issuance of warrants." Under much more egregious circumstances the Court of Appeals for the District of Columbia Circuit held:

Such extraordinary anticipatory relief cannot be justified merely on the ground that toll-record subpoenas *might possibly* be abused in the future so as to effect an infringement of plaintiffs' First Amendment rights. If the mere possibility of future government misconduct were sufficient to warrant such prophylatic relief, then the courts would be called upon to superintend virtually *all* investigative activity. Much more than the mere possibility of future official misconduct is needed to justify this type of judicial intervention.

*Reporters Committee for Freedom of the Press v. American Telephone & Telegraph Co.,* 593 F.2d 1030, 1064–65 (D.C.Cir.1978). To obtain such extraordinary relief, the plaintiffs must demonstrate "a clear and imminent threat of future [governmental] misconduct." *Id.* at 1071; *accord, Olagues v. Russoniello,* 770 F.2d 791, 801 (9th Cir. 1985). The record before the court does not demonstrate a clear and imminent threat of future governmental misconduct.

■ Paragraphs o, p, q, r and s ask this court to modify the terms of the plea agreement, sentences and parole conditions which were adopted and ordered by the Newton Superior Court during sentencing and after Richard Drost entered a plea of guilty to ten (10) criminal charges. The plaintiffs Drost and Naked City, Inc. have failed to present any evidence that the sentence imposed in accordance with the signed plea agreement has been appealed. A challenge to a sentence imposed, as to the fact and duration of confinement, is a request for *habeas corpus* relief under Section 2254 of Title 28 of the United States Code. *See, Wolff v. McDonnell,* 418 U.S. 539, 554, 94 S.Ct. 2963, 2973, 41 L.Ed.2d 935 (1974); *Preiser v. Rodriguez,* 411 U.S. 475, 499 fn. 14, 93 S.Ct. 1827, 1841 fn. 14, 36 L.Ed.2d 439 (1973); *United States ex rel. Villa v. Fairman,* 810 F.2d 715, 718 (7th Cir.1987); *Hanson v. Heckel,* 791 F.2d

93, 95 (7th Cir.1986). The relief sought in those paragraphs challenges the fact and duration of the conditions imposed as a sentence of the state court. A plaintiff, by alleging money damages, does not convert a *habeas corpus* challenge into a claim under Section 1983 of Title 42 of the United States Code. *See, Wolff,* 418 U.S. at 544, 94 S.Ct. at 2969; *Preiser,* 411 U.S. at 499 fn. 14, 93 S.Ct. at 1841 fn. 14; *United States ex rel. Villa,* 810 F.2d at 718; *Hanson,* 791 F.2d at 95. A prerequisite before bringing a *habeas corpus* petition is exhaustion of state remedies. *See, Rose v. Lundy,* 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982); *Duckworth v. Serrano,* 454 U.S. 1, 3, 102 S.Ct. 18, 19, 70 L.Ed.2d 1 (1981); *Preiser,* 411 U.S. at 490–498, 93 S.Ct. at 1836–40; *Hanson,* 791 F.2d at 95. In the face of the long and well documented history of the exhaustion requirement, the plaintiffs, Drost and Naked City, Inc., seek *habeas corpus* relief without evidence of any attempt to exhaust state remedies. Based upon the record as its exists in this case, this court lacks jurisdiction to consider the *habeas corpus* relief sought. Counts 6, 7, 8, 9, 10, 14, 15, 16, 23, 24, 28, 29, 33, 34, 35, 36, 42, 43, 44, 45, 46, 47 and 48, allege constitutional violations during the investigation, prosecution, guilty plea, sentencing and parole of Drost and Naked City, Inc. and challenge the constitutionality of the fact and duration of the plaintiffs', Drost and Naked City, Inc., confinement outside the State of Indiana. Consequently, the likelihood of success on the merits of those claims is "less than negligible". *See, A.J. Canfield,* 796 F.2d at 906; *accord Chicago Bd. of Realtors,* 819 F.2d at 735.

■ The plaintiffs allege that the alleged confiscation of personal property and alleged sale of that property by the sheriff violated their Fifth and Fourteenth Amendment due process rights. They appear to allege the confiscation was a "taking" and that the sale violated due process. The record illustrates that both of these claims must be considered in light of *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), *overruled in part on a different issue, Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986) and its progeny. As in *Parratt v. Taylor,* the plaintiffs' allegations at issue relate solely to an alleged negligent or intentional deprivation of property interests. *Id.* This Court held in *Thurman v. Rose,* 575 F.Supp. 1488 (N.D.Ind.1983) that:

> a negligent deprivation of a property interest by one acting under color of state law does not state a claim under 42 U.S.C. § 1983 where the forum state provides an adequate post-deprivation remedy.

*Id.,* at 1489; *see also Hudson v. Palmer,* 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984) (extended *Parratt* to intentional torts); *Parrett v. Taylor,* 451 U.S. 527, 543–44, 101 S.Ct. 1908, 1917, 68 L.Ed.2d 420 (1981); *Bailey v. Andrews,* 811 F.2d 366, 371 (7th Cir.1987); *Papapetropoulous v. Milwaukee Transport Services,* 795 F.2d 591, 594–95 (7th. 1986); *Jones v. Board of Education of Township High School Dist. No. 211,* 651 F.Supp. 760, 764 (N.D.Ill. 1986); *Donald v. Polk County,* 649 F.Supp. 1408, 1411 (W.D.Wis.1986).

In Indiana, the sale of personal property by the sheriff is regulated by statute. The sale is regulated by Indiana Code Section 34–1–39–7 which reads:

> Personal property shall not be sold unless the same shall be present and subject to the view of those attending the sale; and it shall be sold at public auction, in such lots and parcels as shall be calculated to bring the highest price.

The notice of sale is regulated by Indiana Code Section 34–1–39–6 which reads:

> Previous notice of the time and place of the sale of any personal property on execution, shall be given for ten (10) days successively by posting up written notices thereof in at least three (3) of the most public places in the township where the same is to be made.

The plaintiffs have not alleged facts which illustrate a violation of either of these sections.

Indiana also provides a post-deprivation remedy. Indiana Code Section 34–1–39–12 reads:

A sheriff who shall sell any real estate without giving the previous notice herein directed, or shall sell the same otherwise than in the manner herein prescribed, shall forfeit and pay to the party injured, not less than ten ($10.00), nor more than two hundred dollars ($200), in addition to such other damages as the party may have sustained, to be recovered from the sheriff, or from him and his sureties, in an action on his official bond.

In addition, the Indiana Tort Claims Act I.C. 34–4–16.5–1 provides remedies for tort claims against governmental entities and public employees. The plaintiffs have not alleged that the post-deprivation remedies are inadequate. Consequently, there is a less than negligible chance of success on the merits.

The same analysis and result are reached if these pleadings are construed to allege an intentional or reckless taking of *personal property. Hudson v. Palmer,* 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984).

### III.

■ In *Imbler v. Pachtman,* 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976), the Supreme Court of the United States "held that prosecutors enjoy absolute immunity from § 1983 liability for acts performed within the scope of their quasi-judicial roles as advocates in initiating a prosecution and presenting a State's case." *Stokes v. City of Chicago,* 660 F.Supp. 1459, 1460 (N.D.Ill. 1987) (citing, *Imbler v. Pachtman,* 424 U.S. 409, 430–31, 96 S.Ct. 984, 995, 47 L.Ed.2d 128 (1976)); *see also, Hampton v. Hanrahan,* 600 F.2d 600, 632–33 (7th Cir. 1979), *rv'd in part on other grounds,* 446 U.S. 754, 100 S.Ct. 1987, 64 L.Ed.2d 670 (1980); *Heidelberg v. Hammer,* 577 F.2d 429, 432 (7th Cir.1978). Recently, the Supreme Court affirmed the holding of *Imbler,* and held that prosecutors are absolutely immune when carrying out prosecutorial functions. *Cleavinger v. Saxner,* 474 U.S. 193, 106 S.Ct. 496, 500, 88 L.Ed.2d 507 (1985); *accord, Pryzina v. Ley,* 813 F.2d 821, 823 (7th Cir.1987). Counts 4, 6, 7, 9, 11, 14, 16, 45, 46 and 48 allege injury as a result of acts arguably performed within the scope of a prosecutor's responsibility to initiate, prosecute and present the State's case. Therefore, the likelihood of success on the merits of those claims is less than "some probability". *Brunswick Corp. v. Jones,* 784 F.2d 271, 275 (7th Cir.1986); *accord, Chicago Bd. of Realtors,* 819 F.2d at 735.

■ The Supreme Court, in *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) as explained in *Huffman v. Pursue, Ltd.,* 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975), held that "[t]he seriousness of federal judicial interference with state civil functions has long been recognized by this Court." *Id.,* at 603, 95 S.Ct. at 1208. The Court quoting Justice Holmes held " 'that no injunction ought to issue against officers of a State clothed with authority to enforce the law in question, unless in a case reasonably free from doubt and when necessary to prevent great and irreparable injury.' " *Id., (quoting, Massachusetts State Grange v. Benton,* 272 U.S. 525, 527, 47 S.Ct. 189, 190, 71 L.Ed. 387 (1926)). In this case, it is clear that the plaintiffs seek to inhibit the enforcement of the Indiana statutes which prohibit public indecency under certain circumstances. The Seventh Circuit reversed a permanent injunction which this judge entered prohibiting enforcement of Indiana's public indecency statutes. *See, Glen Theatre, Inc. v. Pearson,* 802 F.2d 287 (7th Cir.1986). The plaintiffs argue that *Glen Theatre* is distinguishable because "Naked City", an approximately 360 acre area which a person must pay a thirty dollar ($30.00) fee to enter to view "contests", is a private place. The question of whether "Naked City" is a private place is not "reasonably free from doubt". Further, the plaintiffs state in their affidavit that "[o]ur remedy at law is not speedy" which demonstrates that there is no great or irreparable injury. There is less than a "very slight chance of prevailing" on the merits. *See, Centurion Reinsurance Co. v. Singer,* 810 F.2d 140, 145 (7th Cir.1987), *accord, Chicago Bd of Realtors,* 819 F.2d at 735.

■ The Supreme Court in *Huffman* held that the *Younger* abstention doctrine applied to civil as well as criminal proceedings. *Huffman*, 420 U.S. at 604, *accord, World Famous Drinking Emporium, Inc. v. City of Tempe*, 820 F.2d 1079 (9th Cir. 1987); *Brunken v. Lance*, 807 F.2d 1325, 1331 (7th Cir.1986); *Collins v. County of Kendall, Illinois*, 807 F.2d 95, 98 (7th Cir. 1986), *cert. denied*, ⸺ U.S. ⸺, 107 S.Ct. 3228, 97 L.Ed.2d 734 (1987). There are three requirements before *Younger* abstention may be granted: (1) an ongoing state judicial proceeding; (2) implication of an important state interest in the proceedings; and (3) an adequate opportunity to raise federal questions in those proceedings. In addition to challenging the constitutionality of the criminal proceedings, the plaintiffs request that this court enjoin the proceedings in Cause Number 56–A–03–8606–CV–157 in the Newton County Court, Newton County, Indiana. That proceeding is ongoing. Specifically, the Court of Appeals of Indiana for the Third District, on May 14, 1987, reversed and remanded that case to the trial court "to make special findings of fact as required when granting a preliminary injunction." *Andrews v. Board of Commissioners of Newton County*, No. C86–65 Slip op. (Ind.App. 3 Dist. May 14, 1987). That case involves the enforcement of zoning ordinances which are a unique interest of each state. In addition, the plaintiffs have an adequate opportunity to raise federal questions, as evidenced by Judge Garrard's opinion where he states:

> While a municipality may provide that no nonconforming use shall be enlarged or extended, our Supreme Court has held that any attempt to amortize that use, regardless of the length of time, is an unconstitutional taking of property without due process of law and an unreasonable exercise of police power. *Ailes v. Decatur County Area Planning Comm.* (1983), Ind., 448 N.E.2d 1057, 1060.

*Andrews*, No. C86–65 slip op. at 4. It is clear that the three (3) requirements of *Younger* are met. However, there are three exceptions to invocation of *Younger* abstention. The first is:

where the District Court properly finds that the state proceeding is motivated by a desire to harass or is conducted in bad faith, or where the challenged statute is "'flagrantly and patently violative of express constitutional prohibitions in every clause, sentence and paragraph, and in whatever manner and against whomever an effort might be made to apply it.'"

*Huffman*, 420 U.S. at 611; *Jacobson v. Village of Northbrook Municipal Corp.*, 824 F.2d 567 (7th Cir.1987); *World Famous Drinking Emporium*, 820 F.2d at 1082 (zoning ordinance); *Brunken*, 807 F.2d at 1331; *Collins*, 807 F.2d at 98. The plaintiffs allege that they are being harassed and persecuted by Newton County officials. As evidence they point to a list of "raids" conducted at the property referred to as "Naked City", and the recent zoning ordinance dispute. Further, the plaintiffs allege that their "competitor" is in violation of the same zoning ordinance but has not been enjoined and that the county officials do not raid, arrest, prosecute and sentence their competitors for criminal conduct. At this time, the record before this court is void of evidence that any person or entity in Newton County is committing or has committed the same or similar crimes as the plaintiffs, Drost and Naked City, Inc. were charged with and to which they each pled guilty. In *Collins*, the Seventh Circuit held that "[i]nstituting approximately thirty criminal prosecutions over a two-year period does not constitute bad faith or harassment in and of itself." *Collins*, 807 F.2d at 99 (prosecutions were brought under state criminal obscenity statutes). The plaintiffs, also, allege that the absence of an attempt to enjoin the operation of Ponderosa Sun Club, which is alleged to be in violation of zoning ordinances, demonstrates that Cause Number 56–A–03–8606–CV–157 is brought in bad faith and to harass the plaintiffs. The Seventh Circuit relying upon *Hicks v. Miranda*, 422 U.S. 332, 95 S.Ct. 2281, 45 L.Ed.2d 223 (1975), held that:

> The *Younger* rule, as applied in *Hicks [v. Miranda*, 422 U.S. 332, 95 S.Ct. 2281, 45 L.Ed.2d 223 (1975) ], requires more than

a mere allegation and more than a 'conclusory' finding to bring a case within the harassment exception.

*Collins,* 807 F.2d at 98 (*quoting; Grandco Corp. v. Rochford,* 536 F.2d 197, 203 (1976)). In *Grandco,* the Seventh Circuit reversed the entry, by then District Judge Flaum, of an injunction where "[t]he district court essentially relied on the allegations of harassment in the complaint and evidence of multiple prosecutions." *Grandco,* 536 F.2d at 203. The record is before this court is as bare as apparently was the record before Judge Flaum. The second exception to *Younger* abstention is when there is "an extraordinarily pressing need for immediate equitable relief." *Kugler v. Helfant,* 421 U.S. 117, 124–25, 95 S.Ct. 1524, 1531, 44 L.Ed.2d 15 (1975); *accord, Jacobson,* 824 F.2d 567 (7th Cir.1987). The record before this court does not disclose an extraordinarily pressing need for equitable relief. The third exception to *Younger* abstention is when the "challenged provision is flagrantly and patently violative of express constitutional prohibitions." *Moore v. Sims,* 442 U.S. 415, 423, 99 S.Ct. 2371, 2377, 60 L.Ed.2d 994 (1979); *accord, Jacobson,* 824 F.2d 567 (7th Cir. 1987). The statutes and zoning ordinances which appear to be at issue in this case are not flagrantly and patently violative of express constitutional provisions. *See, Glen Theatre, Inc. v. Pearson,* 802 F.2d 287 (7th Cir.1986). Consequently, the plaintiffs cannot invoke any of the three exceptions to the *Younger* abstention doctrine.

### IV.

■ The plaintiffs allege injury as a result of the arrest of other individuals. In Count 21 the plaintiffs allege injury due to the use of "2 undercover Sheriff's deputies" who entered the premises on May 2, 1987, allegedly without a search warrant, and because the "police" entered plaintiff's, Slater, "residence" and arrested eleven (11) of "Slater's guests". Further, during oral argument plaintiffs' counsel argued that the arrest of another 60 or more individuals on July 18, 1987, constituted an injury to these plaintiffs. The Supreme Court has consistently held that "a plaintiff

must generally assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Warth v. Seldin,* 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975); *cf., Foster v. Center Township of LaPorte County,* 798 F.2d 237 (7th Cir.1986). The plaintiffs' counsel admitted that none of the plaintiffs had been arrested on May 2, 1987, or July 18, 1987. In *Foster* the Seventh Circuit recited three (3) "irreducible minimum" requirements:

> ... that must be present before a party may invoke the Article III power of a federal court: (1) the party "personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant," (quoting *Gladstone, Realtors v. Village of Bellwood,* 441 U.S. 91, 99, 99 S.Ct. 1601, 1608, 60 L.Ed.2d 66 (1979)); (2) the injury "fairly can be traced to the challenged action," (quoting *Simon v. Eastern Kentucky Welfare Rights Organization,* 426 U.S. 26, 38, 96 S.Ct. 1917, 1924, 48 L.Ed.2d 450 (1976)); and (3) the injury "is likely to be redressed by favorable decision," (quoting *Simon,* 426 U.S. at 41, 96 S.Ct. at 1925). *See also Allen v. Wright,* 468 U.S. 737, 766, 104 S.Ct. 3315, 3324–25, 82 L.Ed.2d 556 (1984); *Secretary of State v. Joseph H. Munson Co.,* 467 U.S. 947, 104 S.Ct. 2839, 2846, 81 L.Ed.2d 786 (1984); *Watt v. Energy Action Educational Foundation,* 454 U.S. 151, 160, 102 S.Ct. 205, 212, 70 L.Ed.2d 309 (1981).

*Foster,* 798 F.2d at 241–42. The record before this court does not demonstrate the requisite elements to invoke claims premised upon the arrest of other individuals.

■ The plaintiffs complaint alleges injury for which they seek money damages against the State of Indiana and officials of the State of Indiana. The Eleventh Amendment of the Constitution of the United States prohibits suits brought against a state or its agencies unless the state consents to such suit or Congress expressly abrogates the state's immunity. *See, B.H. Papasan v. Allain,* — U.S. —, 106 S.Ct. 2932, 2939, 92 L.Ed.2d 209 (1986); *Green v. Mansour,* 474 U.S. 64, 106 S.Ct. 423, 88

L.Ed.2d 371 (1985); *Atascadero State Hospital v. Scanlon*, 473 U.S. 234, 242–43, 105 S.Ct. 3142, 3148, 87 L.Ed.2d 171 (1985); *Kentucky v. Graham*, 473 U.S. 159, 167, 105 S.Ct. 3099, 3106, 87 L.Ed.2d 114 (1985); *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 99–101, 104 S.Ct. 900, 907–08, 79 L.Ed.2d 67 (1984); *Cory v. White*, 457 U.S. 85, 90–91, 102 S.Ct. 2325, 2328–29, 72 L.Ed.2d 694 (1982); *Quern v. Jordan*, 440 U.S. 332, 339–340, 99 S.Ct. 1139, 1144, 59 L.Ed.2d 358 (1979); *Alabama v. Pugh*, 438 U.S. 781, 782, 98 S.Ct. 3057, 3058, 57 L.Ed.2d 1114 (1978); *Milliken v. Bradley*, 433 U.S. 267, 288, 97 S.Ct. 2749, 2761, 53 L.Ed.2d 745 (1974); *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); *Kashani v. Purdue University*, 813 F.2d 843 (7th Cir.1987); *Brunken v. Lance*, 807 F.2d 1325, 1328 (7th Cir.1986); *Gary A. v. New Trier High School Dist. No. 203*, 796 F.2d 940, 943 (7th Cir.1986); *Adams v. State of Indiana*, 795 F.2d 27, 28 (7th Cir.1986); *Gleason v. Board of Education of the City of Chicago*, 792 F.2d 76, 79 (7th Cir.1986); *Watkins v. Blinzinger*, 789 F.2d 474 (7th Cir.1986), *cert. denied sub nom., Diamond v. Blinzinger*, —— U.S. ——, 107 S.Ct. 1976, 95 L.Ed.2d 816 (1987); *Parents for Quality Education with Integration, Inc. v. State of Indiana*, 662 F.Supp. 1475 (N.D.Ind. 1987); *Richardson v. Penfold*, 650 F.Supp. 810, 811 (N.D.Ind.1986); *Wellman v. Trustees of Purdue University*, 581 F.Supp. 1228, 1229 (N.D.Ind.1984); *Hendrix v. Indiana Public Defender System*, 581 F.Supp. 31, 32 (N.D.Ind.1984). There is no evidence in this record which illustrates that the State of Indiana expressly or impliedly consented to be sued in federal court. Further, Congress did not abrogate the state's Eleventh Amendment immunity when it enacted the Civil Rights Act. *See, Quern*, 440 U.S. at 339–346, 99 S.Ct. at 1144–47; *Alabama v. Pugh*, 438 U.S. 781, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978); *Rucker v. Higher Educational Aids Board*, 669 F.2d 1179, 1184 (7th Cir.1982); *Parents for Quality Education with Integration, Inc. v. State of Indiana*, 662 F.Supp. 1475 (N.D.Ind.1987). Based upon the record before this court there is "less

than a negligible" likelihood that plaintiffs will prevail on their damage claims against the State of Indiana or its agencies. *See, A.J. Canfield*, 796 F.2d at 906; *accord, Chicago Bd. of Realtors*, 819 F.2d at 735.

## V.

▉ The Supreme Court, in *Wilson v. Garcia*, 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985), held that:

> After exhaustively reviewing the different ways that § 1983 claims have been characterized in every Federal Circuit, the Court of Appeals concluded that the tort action for the recovery of damages for personal injuries is the best alternative available. 731 F.2d, at 650–651. We agree that this choice is supported by the nature of the § 1983 remedy, and by the federal interest in ensuring that the borrowed period of limitations not discriminate against the federal civil rights remedy.

*Id.* at 1947. The applicable statute of limitations for claims under 42 U.S.C. 1983 and 1985 in Indiana is two years. *See, Eades v. Thompson*, 823 F.2d 1055 (7th Cir.1987); *Dugan v. Ball State University*, 815 F.2d 1132, 1135 (7th Cir.1987); *Loy v. Clamme*, 804 F.2d 405, 408 (7th Cir.1986); *cf. Anton v. Lehpamer*, 787 F.2d 1141 (7th Cir.1986); *see also, Ross v. Summers*, 630 F.Supp. 1267, 1269 (N.D.Ind.1986); *Gaus v. County of Wells, Indiana*, 620 F.Supp. 1462, 1465 (N.D.Ind.1985). In *Dugan* the Seventh Circuit held that an:

> "Indiana 'plaintiff whose section 1983 cause of action accrued before the *Wilson* decision, April 17, 1985, must file suit within the shorter period of either five years from the date his action accrued or two years after *Wilson*.' " *Loy v. Clamme*, 804 F.2d 405, 408 (7th Cir. 1986), quoting *Anton v. Lehpamer*, 787 F.2d 1141, 1146 (7th Cir.1986) (*Anton* held that *Wilson* was not to be applied retroactively in Illinois).

*Dugan*, 815 F.2d at 1135. However, in view of the recent Supreme Court decision in *Goodman v. Lukens Steel Co.*, —— U.S. ——, 107 S.Ct. 2617, 96 L.Ed.2d 572 (1987), both this court and possibly this circuit

may have been excessively generous in hesitating to apply *Wilson* retroactively. *Id.,* at 2621.

This case was filed on May 22, 1987; any causes of action under 42 U.S.C. § 1983 or 1985 which accrued before April 17, 1985, must have been filed not later than April 17, 1987, or they are barred by the statute of limitations. To the extent that *Goodman* may apply in this case, it decreases the likelihood that these plaintiffs will prevail. Of the plaintiffs' claims under 42 U.S.C. §§ 1983 or 1985 which are not the victim of an immunity defense it appears that based upon the record before this court that there is a "less than negligible" chance of prevailing on the merits.

 Several of the plaintiffs' claims allege injury as a result of acts done by judges or prosecutors acting within the scope of their duties. The Supreme Court has unequivocally held that judges and prosecutors are absolutely immune from liability for damages for acts done within the scope of their duties. *See, Cleavinger v. Saxner,* 474 U.S. 193, 106 S.Ct. 496, 88 L.Ed.2d 507 (1985); *Stump v. Sparkman,* 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978); *Imbler v. Pachtman,* 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976). "A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather he will be subject to liability only when he has acted in the 'clear absence of all jurisdiction.'" *Stump,* 435 U.S. at 357–58, 98 S.Ct. at 1105 (*quoting, Bradley v. Fisher,* 13 U.S. (Wall.) 335, 351, 20 L.Ed. 646 (1872)); *accord, Pryzina v. Ley,* 813 F.2d 821, 823 (7th Cir.1987); *Eades v. Sterlinske,* 810 F.2d 723 (7th Cir.1987); *McMillan v. Svetanoff,* 793 F.2d 149 (7th Cir.1986), *cert. denied,* — U.S. —, 107 S.Ct. 574, 93 L.Ed.2d 577 (1987); *Forrester v. White,* 792 F.2d 647 (7th Cir.1986), *cert. granted,* — U.S. —, 107 S.Ct. 1282, 94 L.Ed.2d 140 (1987); *McDonald v. Krajewski,* 649 F.Supp. 370 (N.D.Ind.1986); *Flynn v. Dyzwilewski,* 644 F.Supp. 769 (N.D.Ill.1986); *Eisenberg v. Sternberg,* 641 F.Supp. 620 (W.D.Wis. 1986); *Miller v. Duffin,* 637 F.Supp. 496

(N.D.Ind.1986), *aff'd,* 812 F.2d 410 (1987). Counts 5, 9, 10, 16, 18, 23, 24, 37, 38, 39, 40, 41, 42 and 43 allege some type of injury as a result of acts by judges. The Supreme Court, in *Stump,* announced two (2) factors to be considered: (1) whether the action in question is the kind normally performed by a judge; and (2) whether the plaintiff was dealing with the judge in his judicial capacity. *Stump,* 435 U.S. at 362, 98 S.Ct. at 1107; *Eades,* 810 F.2d at 725–26. All of the allegations in the plaintiffs' complaint involve acts which are the kind normally performed by a judge while these plaintiffs were dealing with the judges in their judicial capacity. Further, the record is void of any evidence that any of the alleged acts were done in clear absence of all jurisdiction.

The record presently before the court illustrates that the plaintiffs have failed to carry their burden to prove a likelihood of success on the merits of those claims arguably related to their requests for preliminary injunctive relief. Further, the plaintiffs effectively admit that there is an adequate remedy at law by their claims for damages and the conclusion in their affidavit that "[o]ur remedy at law is not speedy." Consequently, the plaintiffs request for preliminary injunctive relief is hereby denied.

Accordingly, and for all the above reasons, it is the ORDER of the Court that the plaintiffs', Naked City, Inc., Dick Drost and Florence Gay Slater, request for preliminary injunctive relief be, and is hereby DENIED. SO ORDERED.

### APPENDIX A

The contents of this appendix are taken directly from the plaintiffs' complaint.

2ND CAUSE OF ACTION—42 USC 1983
DEFENDANTS—CASEY, BLANEY, PETER BISBIS,

13. Plaintiffs incorporate paragraphs 2–12 in this cause of action.

14. Newton county attempted to enjoin Drost but did not attempt to enjoin the Ponderosa.

15. The selective prosecution described in this cause of action constitutes a denial of equal protection and thus a violation of the civil rights of plaintiffs Drost, Slater, and Naked City.

16. As a proximate result of this meritless prosecution under color of state law, plaintiffs have suffered damages in the amount of $10 million for which defendants are each liable.

4TH CAUSE OF ACTION—MALICIOUS PROSECUTION/ABUSE OF PROCESS

18. Defendants Casey, Bisbis, Newton County, Newton County Board of Commissioners, and John Casey initiated prosecution of an illegal temporary restraining order.

19. As a proximate result of this malicious prosecution, plaintiffs Drost, Slater, and Naked City suffered damages in the amount of $10 million.

20. Plaintiffs incorporate all other paragraphs in this cause of action.

21. The malicious prosecution was willful and invidiously discriminatory (based on religion).

22. Punitive damages in the amount of $30 million are warranted against Newton County to deter future malicious prosecutions.

5TH CAUSE OF ACTION—42 USC 1983 DEFENDANT—DAN MOLTER

24. Defendant Dan Molter violated the civil rights of plaintiffs Drost, Slater, and Naked City on 11 May 1987 and thereafter by acting under color of state law as judge in a case in which he and his brother were biased.

25. Furthermore, Dan Molter was counsel to Dick Drost.

26. Furthermore, Dan Molter's brother attempted to send Drost to prison by testifying (beyond his expertise) that the Michigan City prison could adequately care for Dick Drost.

27. As a proximate result of defendants illegal acts, plaintiffs have incurred legal expenses and damages amounting to $500.

28. Defendant Molter is liable to plaintiffs in the sum of $500.

6TH CAUSE OF ACTION—42 USC 1985(2,3)—DENIAL OF EQUAL PROTECTION

DEFENDANTS—PAULEY, RYAN, RUTHERFORD, INDIANA STATE POLICE, INDIANA, NEWTON COUNTY SHERIFF, NEWTON COUNTY DEFENDANTS 3601–3700

36. Newton County police and prosecutors have established a pattern of ignoring cases where Drost is a victim and pursuing cases where Drost is the defendant, whether the case is civil or criminal.

37. Approximately 1973 George Vann was the prosecutor and Ryan was his assistant. Ryan came to Naked City to investigate the theft of $10,000.00 From Dick by Nigel Winfield of Florida. Nigel was arrested in Texas. Newton County said that they could not pay to extradite Nigel and try him. Newton County and the FBI both dropped the case.

38. Approximately 1978 Dick Drost refused to hire Bob Braun. Bob Braun then went to the Indiana State Police. The result was the raid of 14 August 1980.

39. Approximately 1985, Greg Aregood battered Dolly Graebrick and Shirley Dillon. Rather than prosecute Aregood, who already has a record of violent crime, Ryan and his secretary Marcia Pauley investigated and prosecuted Drost.

40. Prosecutors and police knew that the Leah Aregood's molestation story was a lie. Nonetheless they prosecuted Dick.

41. The prosecutors take cases for free for Dick's enemy Porzell.

42. Plaintiffs have suffered emotional distress and anxiety. Plaintiff Drost is a defenseless quadrepligic yet he must rely on private guards because Indiana and Newton County police routinely ignore crimes against him.

43. As a proximate result of the violation of 42 USC 1985, plaintiffs have suffered damages in the amount of $20 million.

44. Defendants are liable to plaintiffs for damages as stated.

45. Since the denial of equal protection was invidiously discriminatory (based on religion), malicious, and wilfull, and since one of the defendants (Newton County) is relatively wealthy, punitive damages of $30 million are warranted to deter future violations.

### 7TH CAUSE OF ACTION—42 USC 1983—FORFEITURE
### DEFENDANTS—NEWTON COUNTY, RYAN, BOWER, CASEY

51. Defendants, under color of law, violated the civil rights of plaintiffs Drost, Slater, and Naked City by pronouncing an illegal sentence of banishment, by forcing Drost to sell Naked City and then driving his buyer into bankruptcy, and by accepting a plea of guilty to violation of a law which has been repealed.

52. As a proximate result of these illegal, unconstitutional acts, defendants have harmed plaintiffs in the amount of $20 million including emotional distress.

53. The acts of defendants were malicious, willfull, and invidiously discriminatory (based on religion).

54. Because of the invidious discrimination and the wealth of one of the defendants (Newton County) punitive damages of $60 million are warranted to deter further violations.

### 9TH CAUSE OF ACTION—42 USC 1983
### DEFENDANTS—NEWTON COUNTY COURT

68. Defendant Newton County Court under color of law violated the civil rights of Dick Drost by banishing him from the state.

69. Drost ran for governor in 1975.

70. Drost desires to run again.

71. Defendant court is violating Dick's right to travel freely from state to state (privileges and immunities clause) and his right to participate in the governmental process.

72. The banishment is based on religious belief or lack thereof. Drost is entitled to damages plus punitive damages of $50 million from defendant Newton County Court.

### 11TH CAUSE OF ACTION—42 USC 1983—PRIVILEGES AND IMMUNITIES CLAUSE
### DEFENDANTS—NEWTON COUNTY

86. Two of the 3 major raids upon Naked City were timed to provide headlines at election time. The raid of 2 May 1987 was timed to happen 2 days before a local election. The raid of 14 August 1980 yielded nothing but press attention for the fall elections.

87. Prosecutors in Newton County are elected.

88. The prosecutors in Newton County violated the civil rights of Dick Drost by illegally raiding his home to garner favorable (pro-prosecution) press coverage. They thus violated plaintiffs' civil rights.

89. Defendants are liable to plaintiffs for damages.

90. Because the defendant is wealthy and because the offense is tampering with the democratic process, imposition of punitive damages of $20 million is warranted.

### 13TH CAUSE OF ACTION—18 USC 1964—RICO RACKETEER–INFLUENCED AND CORRUPT ORGANIZATIONS ACT
### DEFENDANTS—OFFICER IRVIN, RYAN, 3001—3100.

100. In 1986 former Judge Mark Bauer called Dick Drost and told Drost that Bauer knew that Ryan, Officer Irvin, and other members of the Indiana State Police smuggled cocaine through the Rensellaer Airport.

101. Defendants desire to acquire Naked City because Naked City has a private airport.

102. The true names of Officer Irvin and the other smuggler is not known now. Plaintiffs will amend the complaint appropriately when the names become known through the discovery process.

103. Defendants Ryan, Irvin and 3001 through 3100 each committed at least 2 predicate acts as defined in 18 USC 1961.

104. Specifically each of them committed more than one act violation of state and federal narcotics control laws.

105. As a result of the pattern of racketeering activity and the zeal of defendants toward putting Drost out of business, plaintiffs Drost, Slater, and Naked City have been harmed in their business in the amount of $10 million.

106. Pursuant to 18 USC 1964, defendants are liable to plaintiffs for triple damages in the amount of $30 million.

## 14TH CAUSE OF ACTION—42 USC 1983

111. Plaintiffs incorporate paragraphs 100–110 in this cause of action.

112. Defendants Ryan, Irvin, and 3001—3100 violated the civil rights of Dick Drost, Slater, and Naked City by subjecting them to warrantless searches and prosecutions under color of state law in order to drive them out of business.

113. Pursuant to 42 USC 1983, defendants Ryan, Irvin, and 3001–3100 are liable to Drost for damages in the amount of $10 million.

## 15TH CAUSE OF ACTION—42 USC 1985

116. Plaintiffs incorporate paragraphs 100–115 in this cause of action.

117. Defendants Ryan, Irvin, and 3001—3100 conspired to deprive plaintiffs Drost, Slater, and Naked City of their civil rights.

118. Plaintiffs are entitled to damages of $10 million and punitive damages of $40 million from plaintiff.

## 16TH CAUSE OF ACTION—42 USC 1985(2)—OBSTRUCTING JUSTICE

DEFENDANTS—PAULEY, RYAN, AREGOOD, LUDLOW, RUTHERFORD, BAJEMA, FALK, BAUER

121. On or about 17 August 1984, Defendant Marcia Pauley, secretary for Defendant Ryan, interviewed Dolly Graebrick and Shirley Dillon regarding a viscous battery by Greg Aregood upon Shirley and Dolly.

122. Rather than prosecute Aregood, Pauley conspired with Aregood.

123. Pauley convinced the women to drop the charges against Aregood and then investigated and pried into the personal lives of defendants Drost, Slater, Melinda Bohanon, and Naked City without probable cause.

124. Plaintiffs incorporates all other paragraphs in this cause of action.

125. Pauley passed the ill-begotten information to her boss, Ryan.

126. Aregood forced the witness, Leah Aregood, to lie to the police.

127. Ryan knew that Drost was attempting to evict Greg Aregood.

128. Bajema used his position at the welfare office to bring Leah Aregood and other Naked City residents to the police.

129. Ludlow interviewed each girl with Rutherford and Bajema in an attempt to intimidate the girls.

130. Rutherford has been trying many years to get Dick Drost and Naked City.

131. Bauer, then a drunken judge, failed to properly review the deficient evidence. Bauer issued a pretextual and illegal search warrant.

132. Defendants Bauer, Ludlow, Rutherford, Bajema, Aregood (Greg), and Pauley conspired to deprive Drost of his constitutional rights, privileges and immunities.

133. Falk forced several illegal conditions into the plea bargain.

134. Ryan lied to Bauer ex parte (unethically) telling Bauer that Drost bribed Aregood.

135. Bauer resigned from the case based on this ex parte knowledge.

136. The new judge, Bower, accepted a guilty plea for IC 35-30-10.1-2 despite the fact that the law had been repealed 3 years earlier.

137. The new judge accepted a plea of guilty on 2 counts of battery from a quadraplegic!

138. As a proximate result of this illegal conspiracy, plaintiffs Drost, Slater, Naked City, and Bohanon suffered damage in the amount of $20 million.

139. Because of the state and local governmental action of this cause of action and because of the invidious nature of the discrimination involved (it was based on religion and race) punitive damages of $10 million are warranted.

## 19TH CAUSE OF ACTION—42 USC 1983—TAKING WITHOUT COMPENSATION
### DEFENDANTS—RYAN, NEWTON COUNTY, INDIANA

211. Plaintiffs Drost, Naked City, and Slater incorporate all other paragraphs in this cause of action.

212. Defendants Ryan, Newton County, and Indiana (the Indiana State Police) have conducted at least 4 major raids on Naked City. Each time they confiscated tapes and equipment. None has ever been returned.

213. In the raid of 14 August 1980, the police took $75,000 worth of cameras and equipment.

214. In April 1986 Ryan indicated that Newton County intended to keep the equipment.

215. Keeping the equipment is a violation of the 5th amendment as made applicable to the states through the 14th amendment. It is also a violation of Indiana Bill of Rights section 11.

216. Plaintiffs demand immediate return of all confiscated equipment.

217. Defendants are liable to plaintiffs in the sum of $75,000 for the value of the equipment.

218. In view of the wealth of the defendants and the repeated occurences of the illegal seizures, punitive damages of $400 million are warranted.

219. In the raids of 2 May 87, 24 May 85, and 1972 tapes and equipment were taken. Plaintiffs demand the immediate return of all the confiscated property.

## 20TH CAUSE OF ACTION—42 USC 1985—CONSPIRACY
### DEFENDANTS—RYAN, NEWTON COUNTY, INDIANA, RUTHERFORD

226. Plaintiffs incorporate all other pargraphs in this cause of action.

227. Rutherford led at least one of the raids and took the equipment or directed its confiscation.

228. The actions of defendants constitute a violation of 42 USC 1985.

229. Plaintiffs are entitled to damages in the sum of $100,000 and punitive damages in the amount of $5 million.

## 21ST CAUSE OF ACTION—ILLEGAL SEARCH AND SEIZURE
### DEFENDANTS—3101—3500

236. On Saturday 2 May 1987, 2 undercover Sheriff's deputies (defendants 3101 and 3102) from employed by Newton County committed perjury declaring under penalty of perjury that they were not police and were not informants and that they wanted to contribute to the legal defense fund.

237. Employing this perjury and fraud and without benefit of a search warrant, these 2 deputies proceeded to annoy and spy on guests of plaintiff Slater.

238. On Saturday evening 2 May 1987 approximately 60 police cars surrounded and invaded Naked City.

239. Without benefit of a search warrant or probable cause, approximately 18 police forced their way into the residence of plaintiff Slater under color of law and illegally arrested 11 of Slater's guests. Then the police confiscated some legal commercially available pornographic video tapes.

240. Plaintiffs do not know the names of the defendants. When plaintiffs learn the true names of defendants, plaintiffs will amend the complaint.

241. As a proximate result of this violation of the civil rights of plaintiff Slater, Plaintiff Slater has suffered damages in the amount of $10,000.00 for which defendants 3101–3500 are each liable.

242. In view of the oppressive nature of the raid, the repeated raids, and the purpose of the raid (religious oppression) punitive damages of $1,000 per officer are warranted.

### 22ND CAUSE OF ACTION—KU KLUX KLAN ACT—42 USC 1985(3)

DEFENDANTS INDIANA, INDIANA STATE POLICE, NEWTON COUNTY, NEWTON COUNTY SHERIFF, 3101—3500

246. Plaintiff incorporates all other paragraphs in this cause of action.

247. By conspiring and going out on the highway in disguise (disguised as members) to harass the guests of plaintiff, and by causing injury to plaintiff Slater, these police have violated the Ku Klux Klan Act and are liable to plaintiff Slater in the sum of $10,000.00.

248. Since the act was malicious, with the intent to intimidate persons of a particular religious persuasion and because approximately 90 people conspired, the imposition of punitive damages is of $30 million is warranted.

249. The Newton County Sheriff Deputies were acting in the course and scope of their employment. Newton County, through its elected officials has mandated the harassment. Officials have publicly stated their intent to put Dick Drost and Naked City out of business.

### 23RD CAUSE OF ACTION—42 USC 1983

### ILLEGAL SEARCH WARRANT—24 MAY 1985

### DEFENDANT—MARK BAUER

256. Defendant incorporates all other paragraphs in this cause of action.

257. On or about 24 May 1985 Mark Bauer issued a search warrant knowing that there was not sufficient probable cause.

258. As a proximate result of this tort, plaintiffs suffered damages in the amount of $20 million.

259. Defendant is liable to plaintiffs for damages of $20 million.

### 25TH CAUSE OF ACTION—UNNECESSARY RIGOR

### DEFENDANTS—X–RAY TECHNICIAN, 3600–3650

271. Defendant X-ray technician in approximately 1982 at Michigan City Indiana gave Drost too much radiation. Drost has not been able to defecate the same since that time.

272. Defendants 3600–3650 conspired with the technician to administer this excess radiation. Some of them intended to intimidate Dick, others were negligent. Some were doctors.

273. The true names of defendants 3600–3650 are not now known but will be amended to the complaint when they are discovered.

274. The unnecessary vigor is a violation of Indiana Bill of Rights section 15, 42 USC 1983, and 42 USC 1985 for which Drost is entitled to compensation and punitive damages in the amount of $2 million and $20 million respectively.

### 28TH CAUSE OF ACTION—18 USC 1964 (RICO)—BRIBERY

### DEFENDANTS—STATE POLICE DEFENDANTS 4000–4100

301. Defendants purchased a maroon Dodge for Greg Aregood to influence his daughter's testimony and to put Dick Drost and Naked City out of business.

302. The true names of defendants are not now known but will be amended to the complaint when discovered.

303. Defendants are liable to plaintiffs for compensatory and punitive damages of $10 million and $30 million respectively.

### 29TH CAUSE OF ACTION—42 USC 1985(2) OBSTRUCTION OF JUSTICE

### DEFENDANTS—AREGOOD, 4000–4100

311. Plaintiff incorporates paragraphs 301–310 in this cause of action.

## 31ST CAUSE OF ACTION—42 USC 1983 —DEPRIVATION OF CIVIL RIGHTS DEFENDANT—MARK BAJEMA

321. On or about 22 March 1985 Mark Bajema under color of law violated the civil rights of Linda Bohanon by forcing her to stay at a foster home in order to force her to make incriminating statements against Dick Drost.

322. Plaintiff is entitled to compensatory and punitive damages of $100,000 and $10 million respectively.

## 32ND CAUSE OF ACTION—42 USC 1983 —DEPRIVATION OF CIVIL RIGHTS DEFENDANT—MARK BAJEMA

326. Since March 22 1985 Mark Bajema has attempted to prevent Melinda Bohanon from communicating with Dick Drost.

## 33RD CAUSE OF ACTION—INTIMIDAT-ING A WITNESS 42 USC 1985(2) DEFENDANT—MARK BAJEMA

327. Plaintiffs incorporate paragraphs 316–326 in this cause of action.

328. As a proximate result of the intimidation by defendant, plaintiffs Drost, Slater, Naked City, and Bohanon suffered damages for which defendant is liable for compensatory and punitive damages of $20 million and $60 million respectively.

## 34TH CAUSE OF ACTION—42 USC 1983 DEFENDANT—MARK BAJEMA

### PLAINTIFF—FLORENCE SLATER

334. Mark Bajema under color of law violated plaintiffs constitutional right to association.

335. Defendant is liable to Slater for compensatory and punitive damages of $1 million and $5 million respectively.

## 35TH CAUSE OF ACTION—42 USC 1983 DEFENDANT—MARK BAJEMA

### PLAINTIFF—DICK DROST

341. Under color of law, Bajema denied plaintiffs right to associate with Melinda Bohanon.

## 36TH CAUSE OF ACTION—42 USC 1985—CONSPIRACY TO VIOLATE CIVIL RIGHTS

### PLAINTIFF—DICK DROST

342. Bajema conspired with Rutherford, Aregood and others to intimidate Melinda into making allegations against Dick. He conspired with Greg Aregood to attempt to put Dick out of business and to deny Dick a fair trial and to defame Dick

## 37TH CAUSE OF ACTION—42 USC 1983

### DEFENDANT—NEWELL A. LAMB

343. On 27 May 1986, defendant Judge Newell A. Lamb, age 78, violated the civil rights of plaintiff Drost by appointing a judge pro tem without consent of Drost, Drost's counsel, or any other pertinent party.

344. Defendant Judge Lamb appointed a former prosecutor, Edwin L. Robinson to the case of Newton County vs. Norman Andrews.

345. Robinson is not a judge.

346. As a direct and foreseeable result of this violation of Drost's constitutional right to counsel, Dick Drost suffered massive financial damage. More specifically, Naked City was closed for one entire season. A purchaser of Naked City was forced into bankruptcy.

347. Judge Lamb failed to find a new judge for the case after 24 October 1986 when defendant Robinson continued the case until spring to take a 6 month vacation.

348. The acts of defendant Lamb were done under color of law with the intent to deprive plaintiff Drost and Drost's associates their constitutional rights.

## 38TH CAUSE OF ACTION—42 USC 1985

### DEFENDANT—JUDGE LAMB

349. Plaintiff incorporates paragraphs in this cause of action.

350. Defendant Lamb conspired with defendant Judge Robinson and others to deprive plaintiff Drost of his constitutional rights.

### 40TH CAUSE OF ACTION—42 USC 1983 DEFENDANT—JUDGE ROBINSON

355. Immediately upon appointment as judge, Robinson ordered the closure of Naked City. In so doing, Robinson violated the constitutional rights of Drost.

356. The closure was illegal. It was eventually overturned by an appellate court.

357. On 24 October 1986 Judge Robinson continued the Naked City case until spring 1987.

358. Defendant Robinson continued the case intending to cause financial harm to Dick Drost by closing Naked City for another year.

359. Defendant Judge Robinson performed these acts under color of law with the intent to violate the constitutional rights of plaintiff Drost.

360. Drost is entitled to compensation under 42 USC 1983.

### 41ST CAUSE OF ACTION—42 USC 1985 DEFENDANT—JUDGE ROBINSON

361. Plaintiff incorporates all other paragraphs in this cause of action.

362. Defendant Robinson conspired with Judge Lamb, prosecutor Ryan, Prosecutor Casey, Attorney Blaney, and others to deny Drost his constitutional rights.

363. Defendant Robinson permitted a mob atmosphere to prevail at the hearing at which he closed Naked City. In so doing, Robinson conspired with the crowd to deny Drost his civil rights.

### 42ND CAUSE OF ACTION—42 USC 1983 DEFENDANT—STEPHEN C. BOWER

371. Defendant Stephen C. Bower, age 47, maintains a law practice at 202 North 3rd Street, P.O. Box 45 Kentland, Indiana 47951, telephone 219–474–5121.

372. Defendant Bower violated the constitutional rights of plaintiff Drost by imposing an illegal sentence upon Drost.

### 43RD CAUSE OF ACTION—42 USC 1985 DEFENDANT—STEPHEN BOWER

381. Plaintiff incorporates all other paragraphs in this cause of action.

382. Defendant Bower conspired with prosecutors Ryan and Casey to violate the constitutional civil rights of plaintiff Drost.

### 44TH CAUSE OF ACTION—42 USC (PROSECUTORIAL MISCONDUCT) DEFENDANT—R. STEVEN RYAN

391. Defendant R. Steven Ryan, age 45, maintains a law practice several locations, one of which is 301 East Graham Street, P.O. Box 338, Kentland, Indiana, 47951, telephone 219–474–5158.

392. Defendant Ryan violated the civil rights of Drost by prosecuting Drost despite Ryan's knowledge of Drost's innocence.

393. Defendant Ryan committed these offenses under color of law.

### 45TH CAUSE OF ACTION—42 USC 1985 DEFENDANT—R. STEVEN RYAN

401. Defendant Ryan conspired with convicted felon Greg Aregood and Aregood's daughter, Leah, to deny Drost his constitutional rights.

402. Defendant Ryan conspired to prevent witnesses Drost and Leah Aregood from testifying freely, fully, and truthfully in Drost's criminal case.

403. Defendant Ryan permitted Greg Aregood to escape prosecution for the vicious battery Aregood committed at Naked City upon Mrs. Shirley Dillon and her sister Dolly in the summer of 1984.

404. Defendant Ryan permitted Greg Aregood to escape prosecution for spousal assault and battery upon Greg's wife Diane in 1984.

405. Defendant Ryan permitted Greg Aregood to escape prosecution for 3 counts of attempted extortion committed against Drost in 1986.

406. Defendant Ryan permitted Greg Aregood to escape prosecution for welfare fraud. Aregood collected welfare under 3 names, one of which was Eddie Cason.

407. In 1983 Defendant Ryan permitted 2 thugs to escape prosecution after they threw beer bottles at Drost and others, broke windows at Naked City, and attempted to run over Albin Drost with an automobile.

408. Ryan conspired with Indiana State Police, Sergeant Barry Rutherford of the Indiana State Police, and others, to deprive Drost of his civil rights.

### 46TH CAUSE OF ACTION—18 USC 1964 RACKETEER–INFLUENCED AND CORRUPT ORGANIZATIONS—RICO DEFENDANT—PROSECUTOR RYAN

416. Plaintiff incorporates all other paragraphs in this cause of action.

417. Prosecutor Ryan corruptly obstructed and impeded the due administration of justice in violation of 18 USC 1503.

418. Plaintiff violated 18 USC 1503 by misrepresenting to Judge Mark Bauer that Drost had bribed Greg Aregood. This misrepresentation was calculated to cause Judge Bauer to resign from the Drost case. Bauer did resign from the Drost case.

419. Defendant Ryan committed at least 2 of the predicate acts specified in 18 USC 1961.

420. Defendant Ryan committed these crimes with the intent to drive Drost out of business and purchase Naked City at a reduced price.

421. Defendant Ryan conspired with Indiana State Police to deprive Drost of police protection and to focus special attention on the harmless activities of Drost.

422. As a direct and foreseeable consequence of Ryan's corrupt conspiracy, Drost suffered massive injury to his business and property.

423. Drost is entitled to TRIPLE DAMAGES AND ATTORNEY FEES under 18 USC 1964.

### 47TH CAUSE OF ACTION—RICO DEFENDANT—SERGEANT BARRY RUTHERFORD

424. Plaintiff incorporates all other paragraphs in this cause of action.

425. Defendant Sergeant Barry Rutherford is employed by the Indiana State Police.

426. During 1986 and before those years, defendant Rutherford visited Drost's competitors, the Ponderosa Nudist Resort. There Rutherford conspired with Bob Braun, Tom Schmidt, and others to drive Dick out of business by unlawful means.

427. The Ponderosa was founded by former residents of Naked City who were expelled by the previous owner, Alouis Knapp. The Ponderosa has copied the activities of Drost in an attempt to succeed as Drost did. In 1986 the Ponderosa, having succeeded in closing Naked City, enjoyed a monopoly in the area. Ponderosa benefited by Drost's years of advertising. Drost's patrons, finding Naked City closed, went to Ponderosa. Ponderosa's summer events are copied directly from Drost. Many of the participants (most notably pornography star Hyapatia Lee) found their way to Ponderosa by way of Naked City and the closure thereof.

428. In 1986 Drost received an offer from the Ponderosa to buy Naked City. This was after defendant Rutherford had succeeded in closing Naked City.

429. In 1986 Drost received a tip from a confidential informant that members of the Indiana State Police desired to purchase Naked City after driving Dick out of business.

430. In 1986 defendant Rutherford committed a RICO predicate crime (18 USC 1961, 1510) by obstructing, delaying, and preventing communication of information relating to the commission of a federal crime (extortion and wire fraud) by means of misrepresentation and intimidation. More specifically, Rutherford impeded and

sandbagged prosecution and investigation of extortion and wire fraud by LeAnn Cooper. The FBI caught her red-handed.

431. In 1985 defendant committed 3 other predicate acts. He violated 18 USC 1503 by atempting to influence 3 Naked City minors by intimidation and threats.

## APPENDIX B

The text of the sworn affidavit of Florence Slater and Dick Drost is as follows:

We, Florence Slater and Dick Drost, declare the following under penalty of perjury:

1. About 1 week after our lawyer filed the federal complaint and served a copy of it upon prosecutor Harry Falk, the Newton County authorities auctioned off the $50,-000 worth of equipment that they had seized from us in 1980. I believe that they did this to attempt to thwart the ability of the federal court to return these items to us. We heard about the sale from a friend of our friend, Ted Noyes. Ted's friend bought a tape duplicator at the sale and offered to sell it back to us. We received no notice of the sale. We believe that immediate action is necessary to preserve the status quo pending resolution of the dispute over the property. We are likely to prevail because the equipment was not used in the commission of a crime and is not contraband. It should lawfully be returned to us. Our remedy at law is not speedy. We have waited 5 years for the equipment. As soon as the authorities saw that we would try to get it back, they illegally dispersed the equipment.

2. At the raid at Naked City on 2 May 1987 one of our friends challenged the entrance of the camera man. The camera man then produced a badge. The film was shown on television. The police apparently had time enough to notify the press and round up 90 police cars, but they did not have time enough to produce a search warrant.

3. On 2 may 1987, at the raid, the police told our friends not to come back again. The police said that there will be more raids. In court, the prosecutor threatened to prosecute our friends for a felony if they did not plead to a misdemeanor. In court, the prosecutor or judge told our friends to go to our competitor, the Ponderosa. They used the arraignment as an opportunity to interrogate our friend Ron Smith for 30 minutes. They interrogated Ron about our lawyer. They successfully intimidated Ron. He pleaded guilty. Ron's lawyer, Ralph Bower, failed to disclose to Ron that Ralph is a close relative of former Judge Bower who is a defendant in the federal case. Ralph failed to disclose to Ron that Ralph is an enemy of Dick Drost and that Ralph's main concern is the closure of Naked City.

4. Naked City is private property. We are not open to the public. Only friends of Florence Slater are permitted on the property. The undercover police who spied on our guests without a search warrant on 2 May 1987 declared under penalty of perjury in writing that they were not police.

5. Defendant Commissioner Williamson pledged to harass us as much as he can. He is quoted saying that on the front page of the 4 July 1985 issue of the Lafayette Journal and Courier.

6. Dick Drost depends on capital for his living. He is a quadriplegic victim of muscular dystrophy. During the past year he has suffered massive financial damage due to the closure of Naked City and other unrelated acts of oppression. Dick and Florence have reached the point where further illegal oppression will cause irreparable harm including poverty (which will be deadly for Dick), anxiety, strain upon personal relationships, and loss of companionship.

7. The entire 1985 case against stick stemmed from Dick's backfired attempt at generosity. He originally invited the Aregood's to stay at Naked City at the request of Reverend Van Lou. After Greg Aregood attacked many people and the police would do nothing about it, Dick evicted Greg. The police, in typical fashion, conspired with Dick's new enemy to try to hurt Dick. They succeeded.

8. Dick only pleaded guilty in 1986 because of the severe oppression against him

caused him to give up. The first 3 counts against him were for exhibition of an obscene performance. The performance was not obscene. No jury found it obscene. The exhibition was not fully tested against the U.S. Supreme Court's Miller standard for obscenity. Counts 4 through 6 are for violations of a law that was repealed years before Dick was alleged to have committed the crime.

9. Counts 7 and 8 are for battery—preposterous considering that Dick is a quadriplegic and cannot even feed himself.

10. Counts 9 and 10 are for child solicitation—they are meritless.

11. The terms of Dick's probation are illegal. Indiana law at section 35–50–3–1 limits misdemeanor probation to 1 year.

12. The terms of Dick's probation are also illegal under Indiana statute 35–38–2–2 which lists permissible terms of probation.

13. Dick's probation terms that he sell Naked City and leave the state are both unconstitutional. Forfeiture and banishment from the state are unconstitutional.

14. The Newton County Sheriff protected the Ponderosa in 1985 when they offered prostitution at their contests. See the photographs and the affidavit of Donald Peden.

15. We have conducted the Miss Nude World contest for almost 20 years without any problems. It is a major source of revenue for Naked City. The police raided Naked City illegally on 2 May 1987. We therefore are worried that they will do it again. We need the protection of this U.S. District Court to protect us from a raid during our contest.

16. Al Drost is near death. In the last year, Al and Dick have grown apart due to distance and the strain of financial and police problems. If Dick does not visit Al soon, Al will become irreparably alienated from Dick.

17. During the past winter, we almost ran out of money. We are in dire need of the money that our regular contest will generate. The money from last year's contest was skimmed and taken by Norman Andrews because we were not here to watch.

We need to be at the contest. Our camp is simply going to pieces without our guidance.

18. We miss our friends at Naked City. They miss us.

19. On 14 May 1987, Attorney Fred Cohn succeeded in convincing an Indiana Appellate Court that the injunction against us was illegal. Attorney Douglas Palaschak requested that Newton County return our $5000 cash bond and $45,000 promissory note. He visited the court house in person on 22 May 1987 and asked the clerk for the money. She refused. He then asked Judge Molter to order the return of the money. He refused.